UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

_____X

UNITED STATES OF AMERICA

      Respondent

     -v-         Case No: 03 Cr. 1277 (WHP)

                12CV 6632

RODERICK GUNN

     Petitioner

_____X

MEMORANDUM OF LAW IN SUPPORT OF

MOTION TO VACATE, SET ASIDE OR CORRECT

SENTENCE PURSUANT TO TITLE 28 U.S.C. §2255

COMES NOW, Petitioner Roderick Gunn respectfully, and moves this Court to Vacate, Set Aside, or Correct his sentence pursuant to Title 28 U.S.C. §2255.

Ground One:  The District Court Lacked Jurisdiction Over Case In The Absence Of A Valid Indictment Or A Valid Waiver Of Indictment.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8|28|12

In this instant case, petitioner was arrested on June 25, 2003 on a Criminal Complaint for a violation of 18 U.S.C. §922(g)(5). No indictment was ever filed in the case and a Criminal Information was filed on October 19, 2003 with an additional five counts, in violation of 18 U.S.C. §1951; §924(c) and 2; 922(g)(5); and 21 U.S.C. §§841(a)(1), 841(b)(1)(D) and 846. Petitioner entered a guilty plea on December 19, 2003 to the six counts charged on the Information. At the Rule 11 hearing, the Court stated in relevant part:

> "And do you understand sir, that you have a
> constitutional right to be charged by an indictment
> rather than an Information?" (Plea Tr. at 10-11).

The Court furthered stated:

> "Do you understand that you've waived [past tense]
> the right to be charged by an indictment and that
> you've consented [past tense] to being charged
> by an information of the Government?" (Plea Tr. at 11).

The Fifth Amendment provides that "no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury. However, a defendant may waive the right of indictment by grand jury pursuant to Fed. R. Crim. P. 7(b).

2

Waiver of an Indictment is an act clothed in formality ...
[T]he waiver must be made in open court; and the defendants
must be informed of the nature and the cause for the
accusation and the court must be satisfied that the defendants
waived their rights knowingly, intelligently and voluntarily.
See United States v. Ferguson, 758 F.2d 843, 850-51 (2d Cir
1985).

The record herein is void of a grand jury indictment and a
valid waiver. Petitioner's Rule 11 hearing became his third
Court appearance since his arrest. There were no Rule 7(b)
procedure prior to the plea allocution hearing for a waiver of
indictment proceeding. At the December 19, 2003 Rule 11
hearing, the Court clearly and expressly stated that
petitioner had [already] waived his right to a grand jury
indictment ... a claim not supported by the records herein.
The Court also stated that petitioner had already consented to
being charged by an information ...yet another claim not
supported by the records. See Plea Transcript pages 10-11.

At the Rule 11 hearing, the Court advised petitioner about
his trial rights. Thereafter, the Court reads the charges in
the Information. Immediately after the reading of the charges,
the Court inquired of petitioner:

"Do you understand that 'you've waived' the right to be
charged by an indictment ..."

3

The language used by the district court, ["you've waived"]
the right to a grand jury indictment, unambiguously spoke of a
waiver done in the past...prior to the court's inquiry at the
Rule 11 hearing. The court did not say "you're waiving" the
right to a grand jury indictment, inferring a present act
during the Rule 11 proceeding, but expressly and clearly
stated that petitioner have already waived his Fifth Amendment
right to a grand jury indictment. It is well established by
the Second Circuit that a guilty plea is not a waiver of the
Fifth Amendment right to a grand jury indictment. See Macklin,
523 F. 2d 193, 196 (2d Cir 1975). See also Smith v. United
States, supra, 360 U.S. 10. In making the requirement of an
indictment jurisdictional, Rule 7(a) merely codifies what
always was considered to be the law. Thus in Ex parte Wilson,
114 U.S. 417 (1885), the Court stated that "the District
Court, in holding the petitioner to answer for such a crime
... without jurisdiction or presentment by a grand jury
exceeds its jurisdiction and he is therefore entitled to be
discharged." See also Steel Co v. Citizens for a Better Env't,
523 U.S. 83, 140 L .Ed 2d 210 (1998)("For a court to pronounce
upon the meaning or the constitutionality of a state or
federal law when it has no jurisdiction to do so is, by very
definition, for a court to act ultra vires"); see also, Ex
parte McCarde, 74 U.S. (7 Wall.) 506, 514 (1868)("When
jurisdiction ceases to exist, the only function remaining to
the court is that of announcing the fact and dismissing the
cause").

Petitioner's case is not different from the Macklin case, in that, petitioner was presented in the absence of a grand jury indictment, while Macklin was presented on an indictment that came from a grand jury whose term had already been expired. The Information herein, 03 Cr. 1277 was filed on October 19, 2003, in the absence of a valid waiver under Rule 7(b). At no given time did Rule 7(b) provides that a consent from a defendant can be substituted for a Rule 7(b) waiver of grand jury indictment ...in any event the Government argue that petitioner consented. A defendant cannot consent to a constitutional right he knows nothing about. The record is devoid of a valid Rule 7(b) waiver from June 25, 2003 to the Rule 11 hearing held on December 19, 2003, and it is well established by the Second Circuit that petitioner's guilty plea cannot be substituted as a Rule 7(b) waiver. Petitioner's conviction and sentence is prohibited by the Fifth Amendment due process Clause, warranting dismissal of tha action in its entirety.

The Macklin Court held that the lack of jurisdiction over Macklin cannot be cured by treating the indictment as if it were an information. The Court also held that "while prosecution by indictment can be waived, the only waiver that could conceivably be found here is the plea of guilty, which is not a waiver of prosecution by indictment where the defendant was initially presented in the absence of a valid indictment.

In United States v. Cordoba-Murgas, 422 F.3d 65 (2d Cir 2005), the Court held:

> "The waiver of indictment is clothed in formal procedure. It must be made in open court and the defendant must be told the nature of the charge and informed of his rights before he is allowed to consent to the waiver. We cannot erode the protective formality of the rule because of a hard case." (citing Macklin).

The Cordoba-Murgas Court also held that the absence of an indictment is not waived by a guilty plea. Id at 69. In this instant case, even if the government should argue that the district court did in fact informed petitioner of the charges, the court's mere recitation of the charges cannot do away with the court's statement that petitioner "have had already waived" his right to a grand jury indictment, or that petitioner had already consented to be charged on an information of the Government.

The core issue at hand, is that: (1) The Court expressly stated on the record that petitioner had already waived his Fifth Amendment right to a grand jury indictment during the Rule 11 inquiry; (2) The court expressly stated that petitioner had already consented to be charged on an information by the government; (3) these acts [waiver and

6

consent] as allegedly done by petitioner has no support on the record that these acts were ever done prior to the court's statement at the Rule 11 hearing, and (4) Absent a valid waiver prior to the filing of the Information, deprives the court of its power over the case to even accept the plea or impose the sentence.

In United States v. Cotton, 261 F.3d 397 (4th Cir 2001), the Fourth Circuit held that a district court cannot impose a sentence for a crime over which it does not even have jurisdiction to try a defendant. The Fifth Amendment renders petitioner's conviction and sentence invalid and warrants dismissal of the action in its entirety. For this court to accept Gunn's guilty plea or the Rule 11 hearing as a substitute for the Rule 7(b) waiver, then in this case would be to let the "tail wag the dog," because petitioner has been held since June 25, 2003 in the absence of a grand jury indictment until October 19, 2003 when the information was filed. Even up to this October 19th, date, there were no valid waiver on record pursuant to Rule 7(b) to validate Criminal Information 03 Cr. 1277 (WHP), which was long filed before the Rule 11 hearing on December 19, 2003. It is undisputable, that the information was filed before any open court proceeding pursuant to Rule 7(b) in order to give the Government the right to charge petitioner on Information 03 Cr. 1277. Therefore, if there were no valid waiver present on the record up to October 19, 2003 when the Information 03 Cr. 1277 was

filed, the Information cannot be valid, because it was brought in violation of petitioner's right to a grand jury indictment, or brought in the absence of a valid waiver of grand jury indictment. Suffice to say, petitioner was unconstitutionally held since his June 25, 2003 arrest. There exist no federal Rule or law that justifies the unconstitutional act that occurred herein, and neither are there any federal rule or law that can be utilized to cure the lack of subject matter jurisdiction as present in this case.

In past proceedings [withdrawal of guilty plea motions], the Government notified the court that if it grants petitioner's request to withdraw his plea, it would cost the Government excess time and expenses to rebuild a case against petitioner as most of his coconspirators had already went to trial and cross-examine the witnesses. The Court had taken this into consideration when it denied petitioner's motion to withdraw his guilty plea. However, this claim presently, is not on whether petitioner's plea was knowing, intelligent or voluntary, but that the court lacked jurisdiction over the case in the absence of a grand jury indictment or a valid waiver of indictment. Likewise, the Second Circuit expressly held : "We cannot erode the protective formality of the rule [Rule 7(b)] because of a hard case." (citing U.S. v. Macklin). The law is clear on this matter, and dismissal is mandatory when the district court lacked jurisdiction over a case. "Due process ... is a guarantee that a man should be tried and

convicted only in accordance with valid laws of the land."
Bond v. United States, 131 S.Ct at 2367. A defendant who
pleads guilty may seek to set aside a conviction based on
prior constitutional claim which challenge the very power of
the state to bring the defendant into court to answer the
charge against him. The Supreme Court has recognized that
there are cases in which an error may affect the fairness,
integrity or public reputation of judicial proceedings even
"independently of the defendant's innocence." Olano, 507 U.S.
at 736-37; see also United States v. Silber, 370 U.S. 717
(1962), in which the Court concluded that the defect in
Silber's indictment constituted reversible plain error even
though the error was not raised in either the court of Appeals
or the Supreme Court. Id at 717. When a federal court
concludes that it lacks subject matter jurisdiction, the court
must dismiss the action in its entirety. Arbaugh v. Y & H
Corp., 546 U.S. 500 (2006). The Second Circuit held that
defect in an indictment is jurisdictional and cannot be cured
by the absence of prejudice to the defendant. United States v.
Tran, 2000 WL 1701651 (2d Cir).


In order for petitioner's conviction and sentence to survive
the constitution muster, the Government have to prove that (1)
petitioner was charged on a grand jury indictment after his
June 25, 2003 arrest and arraignment; or (2) that petitioner
had entered a valid waiver in open court prior to the Rule 11

hearing which was held on December 19, 2003. Only a valid waiver done in compliance of Rule 7(b) could confer jurisdiction upon the court in this case, because no indictment was ever filed. It's a valid waiver that allows the Government to proceed to file a criminal Information. In the absence of a grand jury indictment and a valid waiver, the Information is invalidated.

Should this court hold that Criminal Information 03 Cr. 1277 is valid, then it would be that the court is allowing the "tail [the Information] to wag the dog [the Rule 7(b) Waiver]." The Information cannot survive the constitution muster in the absence of a valid waiver. In this case, where an indictment was never filed, it would be a valid waiver that gives life to the Information, and in absence of such waiver, the Information is a nullity.

Therefore, petitioner moves this Court to reverse the conviction and sentence in this instant case, with an order to dismiss the charges on the grounds that the court had lacked jurisdiction to proceed over the case in the absence of a grand jury indictment and a valid waiver pursuant to Fed. R. Crim. P. 7(b).

Ground Two: Court Lacked Jurisdiction Over Count
    Three - Title 18 U.S.C. §924(c).

A. Title 18 U.S.C. §922(c) Criminalizes Two Separate
 And Distinct Offenses And Cannot be Construed
 As A Codified Federal Crime.

Count three charges petitioner for a violation of §924(c) and
2. Namely, the Information charges that petitioner aids and
abets the "use, carrying, possession and brandishing of
firearms, during and in relation to and in furtherance of"the
crime of violence charged in Counts One and Two. The language
of the §924(c) statute provides in relevant part:

 "any person who, during and in relation to any crime
 of violence or drug trafficking crime ... for which
 the person may be prosecuted in a court of the
 United States, or who, in furtherance of any such
 crime, possesses a firearm, shall, in addition to
 the punishment provided for such crime of violence
 or drug trafficking crime ... [received additional
 penalty]."

Given their plain meaning, the words of §924(c) delineates
two quite different, albeit related proscriptions. In doing
so, the statute defines two different crimes.

The text of 18 U.S.C. §924(c) belies the view that the statute simply identifies alternative means for committing a single offense. The statute actually criminalizes two separate offenses - (1) using and carrying a firearm "during and in relation to" a drug trafficking crime of crime of violence, and (2) possession of a firearm "in furtherance of" a drug trafficking crime or a crime of violence. The two prongs of the statute are separated by the disjunctive "or" which, according to the precepts of statutory construction, suggests the separate prongs must have different meanings. See Reiter v. Sonotone Corp., 442 U.S. 330, 60 L. Ed 2d 931 (1979). Moreover, the statutory language structures the prohibited acts into distinct dependent clauses with different modifiers. See e.g. United States v. Pleasant, 125 F. Supp. 2d 173,178 (E.D. Va 2000). The district court in Pleasant comprehensively analyzed the statutory structures as follows:

> The subject of the sentence at issue is "any person."
> The term "who" is a relative pronoun within
> the first dependent clause. The prepositional
> phrase "during and in relation to," modifies the
> relative pronoun; "uses and carries" are the compound
> verbs; and "firearm" is the object. Rather than
> adding a second modifier to the first relative
> pronoun, (i.e. "Any person who, during and in
> relation to any crime of violence or drug
> trafficking crime ... uses or carries a firearm, or

12

in furtherance of any such crime, possesses a
firearm"), the statute begins with a second
dependent clause with the second pronoun "who." The
second pronoun is then modified by the separate
phrase "in furtherance of any such crime." The
verb in the second dependent clause is "possesses"
and the direct object again is a "firearm."
The use of the second relative pronoun, the presence
of a second dependent clause and the choice of
different modifiers for the prohibited act is
quite distinct from the first. In the first clause,
the use or carriage of the firearm must be "during
and in relation to" the predicate crime, while in the
second clause, the possession of the firearm must
be "in furtherance of" such crime ...Id.

Possession of a firearm under §924(c) may be established by
showing that the defendant "knowingly had the power and the
intention at a given time to exercise dominion and control
over the subject firearm." United States v. Hastings, 918 F.2d
369, 373 (2d Cir 1990). In addition, the requirement that the
gun be possessed "in furtherance of" the charged crime of
violence, may be satisfied by a showing of some nexus between
the firearm and the predicate crime. United States v. Munoz,
143 F.3d 632,637 n.5 (2d Cir 1998). The provision of §924(c)
that criminalizes "possession of a firearm in furtherance of"
certain crimes, was added by Congress in response to the

13

Supreme Court's decision in Bailey. The Supreme Court rejected the broad interpretation of "use" and held that "use" required some active employment. Bailey, 516 U.S. at 144. The Legislative history of Congress' response to this decision indicates that Congress intended the "in furtherance of" limitation to be a higher standard than "during and in relation to," which continues to modify the use and carry prong the statute. See H.R. No:105-344 (1997).

Courts test the presence of separate offense by asking if each requires an additional fact that the other does not. Bins v. United States, 331 F.2d 390, 393 (5th Cir), cert denied, 510 U.S. 821 (1993); see also Blockburger v. United States, 284 U.S. 299, 76 L.Ed 306. Title 924(c) requires of the Government to present different proof to show - using and carrying a firearm "during and in relation to" a crime of violence, from what is required to prove possession "in furtherance of" a crime of violence. Petitioner now argues that Count Three [§924(c)] as charged in the Information, failed to inform petitioner of the charges against him, so as to enable him to plead double jeopardy in defense of future prosecution for the same offense. See Rule 7(c) of Fed. R. Crim. P. The primary offices of an indictment [in this case, an information] are to inform a defendant of the offenses with which he is charged, with sufficient clarity to enable him to prepare his own defense and to permit him to plead a former conviction or acquittal in bar to a subsequent indictment for the same offenses.

From the face of the Information, neither petitioner or the court can determine precisely how he is alleged to have violated the statute charged in count three, namely, aiding and abetting the use, carry, possession and brandishing of firearms, "during and in relation to" and "in furtherance of" the predicate crime of violence, because §924(c) charges two distinct and separate offenses, which the Government grouped together as one offense in a duplicitous manner. See United States v. Combs, 369 F.3d 925 (6th Cir 2003). The Sixth Circuit held: "Because Comb's indictment on Count III [§924(c)] cannot be reasonably construed to have charged him with a crime under federal law, we reverse his conviction and remand to the district court to dismiss the indictment for failure to charge an offense." The failure to charge an offense may be treated as a jurisdictional defect. United States v. Doyle, 348 F.2d 715, 718 (2d Cir). The Fourth, and Sixth Circuit had agreed that §924(c) proscribes two distinct and separate offenses when the defendant is charged for using and carrying a firearm "during and in relation to,...along with possession of firearm "in furtherance of," a predicate offense, because to prove the "use and carry" during and in relation to," requires separate evidence to prove the possession "in furtherance of." See also United States v. Savoires, 430 F.3d 376 (6th Cir 2005)(vacating 924(c) count on grounds that it charges two separate offenses and there's uncertainty which offense the jury verdict rests on). The Court lacked jurisdiction to even proceed over count three as

how it is charged in the Information, "using, carrying, and possession of a firearm, 'during and in relation to' with the "possession of a firearm" 'in furtherance of,' ... is not a codified federal crime as found by the Fourth and Sixth Circuit. The language in the "Bailey Fix Act" makes clear that "use" of a firearm is a distinct crime from "possession" of the firearm; see Bailey v. United States, 516 U.S. 137, thus warranting dismissal of count three.

B. Guilty Plea Does Not Support Crime Of Conviction
   For Count Three

   It is well established law that any facts other than a prior conviction to support a sentence exceeding the maximum authorized by facts established by a plea of guilty or a jury verdict, must be admitted by the defendant or proved to a jury beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. at 490 (2000); Booker, 175 S.Ct at 756. The U.S. Supreme Court has settled that the Apprendi maximum is the sentence that is authorized based solely on those factual predicates that are found within the constraint of the Sixth Amendment. That is, those facts that are (1) proven to a jury beyond a reasonable doubt; (2) admitted by the defendant; or (3) findings of recidivism. See Blakely v. Washington, 542 U.S. 296 (2004). In this instant case, petitioner Gunn stipulated as follows:

16

"My role generally consisted of tipping off the

perpetrators to a potential robbery victim

who has substantial sum of cash and due to the

manner in which the money was earned were unlikely

to complain to the police....In addition, during

the period between the summer 2001 and summer

2002, firearms were brandished during the robberies

which were committed ... [Plea Tr at page 22].


At no time did petitioner stipulated that [he] aided and

abetted the use, carrying, possession and brandishing of

firearms. The record is void of any such stipulation. It was a

requirement of Rule 11, for the Court to satisfy itself that

petitioner admits the essential elements of the charged

offense. See United States v. Gonzalez, 420 F.3d 111 (2d Cir

2005). In Gonzalez, the Second Circuit held: "Because his own

allocution failed to provide an adequate factual basis on the

element of the drug quantity of an aggravated offense, his

guilty plea could not be deemed knowing, voluntary or

sufficient to support a judgment of conviction on a

§841(b)(1)(A) charge. In Gonzalez, the defendant pleaded

guilty to the charge, but he had failed to stipulate to an

essential element to support the conviction. In this instant

case with petitioner Gunn, Gunn pleaded guilty to the charge

in count three, but the record is devoid of any such

17

stipulation to the essential elements for "aiding and
abetting" the use, carry, possession and brandishing of
firearms, during and in relation to, and in furtherance of,
the predicate crimes of violence. Moreover, under the law of
this Circuit, petitioner's stipulation is insufficient to
support an "aiding and abetting" conviction. See United States
v. Medina, 32 F.3d 40 (2d Cir 1994). The Second Circuit held
that Medina could not be convicted for an "aider and abettor"
unless he "consciously assisted the commission of the specific
crime [§924(c)] in some active way," and that mere presence,
coupled with knowledge that a crime will be committed, is
insufficient to sustain a conviction for "aiding and
abetting." Id at 45. See also United States v. Sorrels, 145
F.3d at 753 (requiring more than mere presence and
association); Giraldo, 80 F.3d at 676 ("Proof simply that a
defendant knew that a firearm would be carried, even
accompanied by proof that he performed some act to facilitate
or encourage the underlying crime in connection with which the
firearm was carried, is insufficient"); Labat, 905 F.2d at 23-
24. The Second Circuit law is clear. When a defendant failed
to stipulate to an essential element, the conviction cannot
stand. See United States v. Yu, 285 F.3d at 197-98; United
States v. DeJesus-Abad, 263 F.3d 9 (2d Cir 2000)("noting that
court must assure itself that conduct admitted by defendant is
"an offense under the statutory provision under which he is
pleading guilty").

In order for Count three conviction to pass the constitution
muster, the record must show admission of some act that
directly facilitated or encouraged the "use, carrying,
possession and brandishing" of firearms, independently of the
acts towards the crime of violence. The record herein is
devoid of such stipulation. The Second Circuit, in reversing
Gonzalez, 420 F.3d 111 and Yu, 285 F.3d 197-98, expressly
states that "in the absence of the defendants' stipulation to
the drug quantity element, the court erred in entering a
judgment against them. See also United States v. Adams, 448
F.3d 492 (2d Cir 2005)(vacating judgment on grounds that in
absence of defendant's admission to support factual basis for
the conviction and sentence, the plea was faulty); United
States v. Thomas, 274 F.3d 655 (2d Cir 2001); Thomas v. United
States, 531 U.S. 1062 (2001); McCarthy v. United States, 394
U.S. 459, 22 L.Ed 2d 418 (1969). The Supreme Court overturned
McCarthy's conviction, albeit, McCarthy had answered
affirmatively to all the Rule 11 inquiries, establishing that
he understood the charges, consequences and rights he was
waiving. The Court nevertheless concluded that "if a
defendant's guilty plea is not [equally] voluntarily and
knowing, it has been obtained in violation of due process and
is therefore void." The Court furthered stated that the judges
must determine that the conduct which the defendant admits,
constitutes the offense charged in the indictment or
information. See in particular, Braxton v. United States, 500
U.S. 344.

Braxton was charged for a violation of 18 U.S.C. §§1114 [attempted murder], 111 [assault] and 924(c). At the Rule 11 hearing, Braxton pleaded guilty to the assault and 924(c) offenses. The Government stipulated that: (1) when the U.S. Marshal kicks the accused apartment door, the accused fired a gunshot which lodged in the door knob; and (2) when the Marshal kicks open the door moments later, the accused fired another gunshot. Braxton agreed that what the Government said it would prove [happened] happened. Braxton likewise admitted that he fired the gunshots at the door while the Marshals kicks the door. At sentencing, the court sentenced Braxton under the attempted murder Guidelines pursuant to §1B1.2(a). On certiorari, the Supreme Court reversed the conviction and sentence stating that the accused stipulation did not "specifically establish within the meaning of §1B1.2(a) that the accused attempted to murder the U.S. Marshal," and that there's nothing from the stipulation from which it could be inferred that the accused shot at the Marshal with the intent to kill them.

Viewed in light of Braxton, Gunn's stipulation that "firearms were brandished," is insufficient to support the conviction of aiding and abetting the use, carrying, possession and brandishing of firearms. See Plea Transcripts at page 12. It is clear from the records that Gunn' plea to count three was unknowing and therefore, faulty, and had fell short of an admission to the charged offense, warranting dismissal.

In particular, petitioner stipulated as follows:

(1) ["I"] conspired with others ... to assist them
    in the robbing of other individuals ...

(2) ["I"] conspired with others to possess and
    distribute marijuana ...

(3) In addition, during the period of summer 2001 and 2002
    firearms were discharged ...

(4) ["I"] possessed a loaded Glock and Rugger...

The stipulation is clear that petitioner did not say "he"
aided and abetted the use, carrying possession and discharge
of firearms. Petitioner used the first person Pronoun "I" in
admitting to his conducts relating to the Hobbs Act, the
marijuana and firearm possession [differ from 924(c)]. The
court cannot construe his stipulation to meet the essential
elements in the absence of such stipulation on record.

The specific used words "firearms were brandished" is not an
admission that "petitioner brandished firearms. If these words
are construed as such, then the court would have to take its
words literally when it informed petitioner that he is
pleading guilty to use, carrying and possession of firearms
[count 3] and illegal possession of weapons [counts 5 & 6].

Petitioner Gunn stipulation does not constitute the offense charged in Count Three and petitioner is unaware of what offense the court accepted the guilty plea for, whether (1) using, carrying, possession and brandishing of firearms, or (2) aiding and abetting the use, carrying, possession and brandishing of firearms. The Information charges the latter [18 U.S.C. 2] while the court notified petitioner that he was charged with the former [924(c) principal liability]. In any event, the stipulation on the record did not establish a conviction of neither offenses, and thus, the plea was unknowing and the court erred in imposing the judgement for count three.

Petitioner's mere statement that "firearms were brandished" was not an admission that "he" aided and abetted the use, carrying, possession and brandishing of firearms, equally as Braxton's mere stipulation that the Government is right that what it said [happened] happened ... was not an admission that he "shot at the Marshal." The Second Circuit refused to accept Gonzalez Yu and Adam's stipulations to the §841(b)(1)(A) offenses as specific admission to drug quantity element. Therefore, this court cannot construe Gunn's stipulation "firearms were brandished" as an admission to the element of aiding and abetting the 924(c) offense in count three. Count three requires mandatory dismissal.

22

Ground Three: Guilty Plea Does Not Support Conviction

For Counts Five And Six [§922(g)(5)].

The information charges petitioner in counts five and six
for being an illegal alien in possession of firearm[s], in
violation of 18 U.S.C. §922(g)(5). During the plea allocution,
the court informed petitioner that he is charged with "illegal
possession of firearm." See Plea Transcript at page 10, and
petitioner pleaded guilty to "illegal possessing a weapon,"
for counts five and six. See Plea Transcript at page 24.

Illegal possession of a firearm is not a codified federal
crime under Title 18 U.S.C. §922, and is not a federal crime,
in the absent of other critical elements, such as (1) being an
illegal alien, or (2) being a felon, etc... The Court was
without authority to impose a sentence over an offense not
authorized by Congress [illegal possession of firearms]. The
guilty plea for counts five and six was unknowing and the
court erred in both notifying petitioner that he was charged
for an offense not authorized by congress ["illegal possession
of firearm] and also for accepting a plea that does not
constitute the charged conduct. A law "beyond the power of
Congress," for any reason, is "no law at all." Nigro v. United
States, 276 U.S. 332, 341 (1928). In Bond v. United States,
the Supreme Court held that the validity of Bond's conviction
depends upon whether the constitution permits Congress to

enact §229. Albeit, petitioner was charged for a violation of
§922(g)(5) [illegal alien in possession of firearms], the
court erroneously notified petitioner that he was charged with
"illegal possession of firearms," a distinct offense from that
which is charged in the Information. The latter, [illegal
possession of firearm], is not a codified federal crime
instituted by Congress. The Second Circuit expressly held that
"the offense for which a defendant admits, must constitute the
offense for which he has been charged." See Maher, 108 F.3d at
1524. The Court stated that the rule is designed to "protect a
defendant who is in the position of pleading voluntarily with
an understanding of the nature of the charge but without
realizing that his conduct does not actually fall within the
charge. See Fed. R. Crim. P. Rule 11, Advisory Comm. Note
(1966).


It is important for this court to take judicial notice of
petitioner's post-plea, pre-sentence claim in his Motion To
Withdraw His Guilty Plea, in which he made a viable defense
that he was not an illegal alien in the meaning of 922(g)(5),
because at time of his arrest for the 922(g)(5) conduct, he
had an approved I-130 application, filed under the Legal
Immigration Family Equity Act {LIFE ACT}. The illegal alien
element of the charged offense was never admitted to by
petitioner at the Rule 11 hearing, which voids the guilty
plea. This is also an element the Government admitted that it
would have to prove had petitioner had went to trial.

The plea was unknowing, and faulty, and cannot support the conviction. Petitioner now requests that the conviction for Counts Five and Six be reversed and the charges dismissed on the grounds that the acceptance of the plea and the imposition of the sentence violated Petitioner's Sixth Amendment Apprendi rights; the plea is devoid of an admission to the essential element of being an "illegal alien;" the plea is unknowing, and the plea does not consists the conduct charged in the Information, which deprived the court of its jurisdiction to impose a sentence for an offense petitioner did not plead guilty for, or an offense not deemed a codified federal crime.

Ground Four: Ineffective Assistance of Counsel

A. Counsel Failed To Challenge Court's Lack Of
   Jurisdiction Pursuant To Fed.R.Crim.P. 12(b)(2).

Petitioner submits that counsel [Roger Adler], and successors [other counsels], neglected to bring to the Court's attention that it lacked jurisdiction in the absence of a valid grand jury indictment or a valid waiver of indictment in compliance of Rule 7(b). This failure on counsels is inseparable from ineffective assistance, and is clearly prejudicial. This lack on counsel's part fell below the reasonable standard expected from an attorney, whose duty includes loyalty to the

client, and who should be an advocate to put the Government's case through the adversarial tests. Counsel[s] mere presence beside petitioner throughout the criminal proceeding was not sufficient to meet the Sixth Amendment requirement... "right to counsel" is right to effective assistance of counsel. It's not a difficult task to meet the Strickland prongs in this matter  when counsel[s] failed to present to the Court a claim that the Court lacked jurisdiction in the absence of a grand jury indictment, even prior to the filing of the Information on October 19, 2003. The Second Circuit makes clear that jurisdiction cannot be waived by the parties, and it is well established law that a grand jury indictment is that which gives the court power to proceed, with the exception of a valid Rule 7(b) waiver. The record is devoid of a waiver since June 25, 2003 to October 18, 2003, one day before the Information was filed. The record is also void of a waiver after the Information was filed. Thus, a viable claim of a lack of jurisdiction existed prior to petitioner's plea of guilty, a matter counsel [Roger Adler] failed to present pursuant to Rule 12(b)(2), and a matter succeeding counsels failed to present to the court, and in effect, deprived petitioner of effective assistance of counsel.

26

B. Appellate Counsel Failed To Challenge Denial Of

Minor Role Adjustment Request.

A minor role adjustment applies to a defendant ... who is
less culpable than most other participants, but whose role
could not be described as minimal. U.S.S.G. §3B1.2 cmt. n.5.
At the Rule 11 hearing, petitioner stipulated that his role
consists of tipping of the perpetrators to a specific robbery
victim. Petitioner admitted to being a "tipster." The
Government at no time objected to this specific role
stipulated to, and neither did the court refused to accept the
plea as being a tipster. Petitioner's role was minor compared
to the others, and the success of the conspiracy onwards to an
addition year after petitioner was arrested likewise supports
this claim. It was a known fact that the alleged robberies and
attempted robberies were physically committed by the police
impersonators, who were equally in communication with Needham,
the "Santero" that provided petitioner with targets locations.
Petitioner was entitled to a minor role adjustment for the
mere fact that the Government and the court accepted his
stipulated role as a "tipster" without any objections. See
United States v. Jeffers, 329 F.3d 94,103 (2d Cir 2003)("to be
eligible for a reduction, the defendant's conduct must be
minor as compared to the average participant in such crime");
see also United States v. Labbe, 588 F.3d 139 (2d Cir 2009).
See in particular, United States v. Sanchez, 925 F.Supp

1004,1010-14 (S.D.N.Y.)(court granted minor role adjustment to a "middleman" who brokerage a 12-kilogram cocaine deal), aff'd, United States v. Chalarca, 95 F.3d 239 (2d Cir 1996).

Petitioner was no different from Sanchez as a middle man. Petitioner's role was to collect information from Needham, and pass it on to the police impersonators or whomever Needham chose to perform the robbery. In any event, and the court disagreed with petitioner, such denial did not relieve counsel of his duty to raise on appeal an issue that was already preserved in the lower court at sentencing, and failure to do so was ineffective assistance, warranting relief from this court.

C. Counsel Failed To Appeal Denial Of Pre-Sentence
   Confinement Downward Departure.

It is clearly established by the Second Circuit that harsh pre-trial/ pre-sentence conditions are grounds for downward departures. See United States v. Carty, 264 F.3d 191 (2d Cir 2001); United States v. Hernandez-Santiago, 92 F.3d 97, 101 n.2 (2d Cir 1996). There's a line of Second Circuit cases which supports a downward departure for harsh pre-sentence conditions. See also, United States v. Francis, 129 F.Supp 2d 612 (S.D.N.Y. 2001)(finding that a departure was warranted

"to acknowledge the qualitatively different, substandard
condition to which defendant was subjected for an extended
period" which in custody at a state facility); United States
v. Mateo, 299 F.Supp 2d 201 (S.D.N.Y 2004).


Petitioner had raised this issue in his (pro-se) sentencing
Memorandum, which the Court admitted on record and addressed
the issues raised therein. Albeit, the court denied
petitioner's request for a downward departure for the long
period he spent in a very harsh and unhealthy atmosphere at
the M.C.C., it had remained counsel's Sixth Amendment duty to
raise petitioner's claim in the appellate court, which he
failed to do. It is far fetched, that this claim or prior
claim mentioned that counsel failed to raise in the appellate
brief are frivolous claims. These claims are supported by
Second Circuit authorities and should have been initiated in
petitioner's appellate brief as preserved claims. Counsel's
failure to do so deprived petitioner his right to have the
appellate court review these claims and as such, counsel was
yet again ineffective, warranting relief as requested herein.


D. Counsel Failed To Raise The Claim That Plea For
   Count Three Five And Six Was Unknowing And Faulty
   And That Petitioner Did Not Stipulate To Essential
   Elements To Sustain Conviction.

During the post-plea, pre-sentence phase of this case, petitioner had filed a Motion To Withdraw his guilty plea, which motion was later denied by the court. Thereafter, petitioner filed a Motion for Reconsideration and to relieve counsel [Christopher Booth]. The Court granted the motion to relieve counsel and appointed new counsel Mr Richard Palma. Counsel [Mr Palma], thereafter submitted a new Rule 32 Motion to withdraw petitioner's guilty plea, stating that the plea was unknowingly and unintelligently entered. Counsel also raised a Medina claim in his Rule 32 motion stating that petitioner was not an "aider and abettor" in light of the Second Circuit authority in United States v. Medina, 32 F.3d 40 (2d Cir 1994). Mr Palma remained counsel throughout the sentencing process and the appellate process. However, he failed to present the Medina claim in the appellate brief, which was very well preserved in the sentencing court. Counsel failed to present petitioner's claim that he did not stipulate to being an "illegal alien in possession of firearms," a claim petitioner advised counsel of prior to the submission of the appellate brief.

The Government had responded to counsel's Medina claim [Rule 32 Motion] and presented trial transcripts excerpts from United States v. Robles, 04 Cr. 1036 (GEL) with  Government witness Joey Figuerora's testimony stating that petitioner had a firearm at the Baychester Avenue robbery in December 2001,

which supported the "aiding and abetting" charge. Thereafter, petitioner had submitted a pro se reply, with additional trial transcripts excerpts from U.S. v. Robles, with Government witness Luis Alejandro's testimony, which stated that only Joey Figuerora had a firearm at the Baychester Avenue robbery. In any event, the court should decide to weigh either witnesses' testimony, the jury verdict in U.S. v. Robles would supercede the government's claim, on the grounds that the jury acquitted the trial defendants of all the 924(c) offenses. Petitioner now argues that the witnesses testimony should not be used to consider this "aiding and abetting" issue, but instead, the petitioner's stipulation at the Rule 11 hearing, and even if, the Robles trial evidence would be necessary, both key witnesses testified to the contrary, which would require the rule of lenity in petitioner's favor. It could be reasonably concluded that the jury did not credit Joey Figuerora's testimony concerning the 924(c) offenses, because the jury acquitted the defendants of the 924(c) charges. Petitioner had  merits to his aiding and abetting claim, which counsel had argued at length pre-sentence, yet failed to present it in the appellate brief. Had this claim been presented to the Second Circuit and found to be meritorious, the 924(c) offense would have been reversed. This failure on counsel's part fell below a standard of reasonableness and prejudiced petitioner significantly.

31

E. Counsel Failed To Challenge The Government's
Breach Of The Proffer Agreement

Petitioner had signed a proffer agreement on July 2, 2003,
and thereafter, incriminated himself in numerous crimes. As
part of the terms of the agreement, the Government agreed that
it would not use petitioner's statements obtained at the
proffer sessions, except for rebuttal in any event petitioner
does not enter a guilty plea and decided to go to trial and
presents evidence or a defense contrary to the statements. The
Proffer Agreement also expressly stated: "This is not a
cooperation agreement." On October 19, 2003, the Government
filed Criminal Information, 03 Cr. 1277 with six counts, four
of which were directly derived from petitioner's proffer
statements. As such, this act of the Government significantly
breached the terms of the proffer agreement, which is a
violation of petitioner's Fifth Amendment right to be
protected from Self-Incrimination. The breach of the agreement
spilled over into the Information which can be deemed "fruits
of the poisonous tree," under Wong Sun v. United States.

In later proceedings in 03 Cr. 1277, the Government argued
that petitioner had breached the plea agreement and requested
of the court to upheld the contractual principles against
petitioner from the breach. However, it is inescapable that
the first breach that occurred herein, was the government's
breach of the proffer agreement. It would be a fundamentally

injustice for the Court to uphold a breach allegedly done by petitioner, yet neglects to hold this breach against the Government. This would be justice being served on an unbalanced scale. Prior to sentencing, petitioner had filed a pro-se Motion requesting a Kastigar hearing. The court did not respond to the motion. Nevertheless, all counsels that partake in this case, were well aware of this breach, and all failed to present it to the courts.

 Herein, no other coconspirator had been arrested at the time 03 Cr. 1277 was filed. The Information was filed solely with petitioner's statements, that the proffer agreement had provided protection for, except for limited purposes. To secure a defendant's plea, the government may informally grant him use immunity in exchange for his plea. Since a immunity agreement is in the nature of a contract, its effect is strongly influenced by contract law principles. Due process requires that the government adhere to the terms of any plea bargain or immunity agreement it makes. See Marby v. Johnson, 476 U.S. 504, 509 (1984); Santobello v. New York, 404 U.S. 257, 262 (1971)("when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"). Innes v. Dalsheim, 864 F.2d 974,978 (2d Cir 1988); United States v. Pellertier, 898 F.2d 297 (2d Cir 1989).

33

The principle issue in Pelletier was whether the government use of testimony under an informal grant of use immunity to obtain indictment and convictions on non-perjury counts, in violation of its express agreement to use the immunized testimony only in a prosecution for perjury. The Second Circuit held that it may not, and accordingly reverse and remand. The immunity at issue in this instant case is not "use immunity" under 18 U.S.C. §§6002-6003, but the promised initiated in the proffer agreement. See generally, Kastigar v. United States, 406 U.S. 441,448-62 (1972). The agreement at issue in petitioner's herein claim, expressly stated that petitioner's statements would not be used in the instant case at bar against him, except to rebut any defense contrary to the statements made. See Innes v. Dalsheim, 864 F.2d at 979 (state must bear burden of any lack of clarity in agreement, and ambiguities are to be resolved in favor of defendant); In re Arnett, 804 F.2d at 1202-04 (ambiguous plea agreement read against government). The Pelletier court held that "having granted use immunity and having furthered limited itself to using Pelletier's grand jury testimony against them only in the event the Pelletiers intentionally lied, and even then only in a prosecution for perjury, the government was not free to use that testimony either to [indict] or to obtain convictions on non perjury charges."

Petitioner had filed a Motion requesting a Kastigar hearing, which motion counsel neglected to adopt, and to pursue the

claim at both the district court and appellate court level.
The Second Circuit held that the government cannot escape its
error simply by showing the availability of "wholly
independent" evidence from which it might procured indictment
or conviction had it not used the immunized information. see
e.g. United States v. Nemes, 555 F.2d 51,54, n.3 (2d Cir
1977)("if the indictment had been obtained by direct or
derived use of immunized statements, it would have been
subjected to dismissal"); United States v. Kurzer, 534 F.2d at
515. The Kurzer court stated:

"The Fifth Amendment, in contrast, is by its terms an
exclusionary rule, and as implemented in the immunity
statute it is a very broad one, prohibiting the
use not only of evidence, but of 'information'
'directly or indirectly derived' from the immunized
testimony. The statute requires not merely that
evidence be excluded when such exclusion would deter
wrongful police or prosecutor conduct, but that
the witness be left 'in substantially the same
position as if [he] had claimed the Fifth Amendment
privilege." Id at 516.

The Kurzer court says no more, however, than that when the
defendant has been put at a disadvantage because of the use of
his immunized testimony, although indirect and attenuated,

35

then he deserves relief under Kastigar. In this instant case, the government used petitioner's statements which were protected by the proffer agreement, and he unknowingly waived his rights provided under Fed. R. Evid. 410. Had not the government made such promise[s] within the proffer agreement that it would not use petitioner's statements against him in the case in chief, petitioner would not have waived his Fifth Amendment right to be free from self incrimination. The Supreme Court held in Kastigar, that "this total prohibition on use provides a comprehensive safeguard, barring the use of compelled testimony as an "investigatory lead," and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures. 406 U.S. at 460. The deliberate direct use of petitioner's statement in violation of the government's express agreement to the contrary violates due process, see e.g. Santobello, 404 U.S. at 262, and cannot be considered harmless error. Pelletier, 898 F.2d at 303.

The main issues at hand herein are: (1) The Government breached the proffer agreement terms; (2) Petitioner had waived his Fifth Amendment right to be free from Self-Incrimination unknowingly and unintelligently due to the promises in the proffer agreement, incorporated his rights under Fed. R. Evid., 410 and; (3) Counsel failed to challenge this Fifth Amendment violation, and allowed the government to proceed with Information 03 Cr. 1277, which was derived solely from petitioner's statements and not from any other

36

independent sources. Therefore, petitioner was prosecuted as witness against himself, an act the constitution prohibits.

The Supreme Court in United States v. Mezzanatto, 513 U.S. 196, 130 L. Ed 2d 697, held that a federal criminal defendant's agreement to waive the exclusionary provisions of the plea-statement rule is valid and enforceable, absent some affirmative indication that the agreement was entered into unknowingly or involuntarily. Petitioner had submitted to this court in his first Motion To Withdraw his plea, filed by counsel [Christopher Booth] that counsel [Roger Adler] had promised petitioner that he [Adler] would have argued at sentencing for a sentence less than a year, for the purpose of preventing petitioner from facing mandatory deportation. Counsel [Roger Adler] had expressly made this promise to petitioner on the grounds that counsel had explained prior to the signing of the proffer agreement, that the statements petitioner made at the proffer sessions, would not be used against him in the case in chief, unless petitioner decided not to enter a plea and goes to trial and presented a defense contrary to his statements. In the absence of petitioner's statements, the only pending charge against petitioner then was a violation of 18 U.S.S. §922(g)(5) which was filed on the Criminal Complaint. Counsel gave petitioner the understanding that the only offense he would be criminally prosecuted for, based on the terms of the proffer agreement, was the

§922(g)(5) offense, which is the only offense the government did not obtained directly from the proffer statements. All other offense were obtained directly from petitioner's incriminating statements, which the government obtained only because it promised petitioner the statements would not be used against him in the case in chief.

In light of the Supreme Court's decision in Mezzanatto, the waiver is unenforceable against petitioner because it was not knowing and voluntarily entered, and as such, the fruits from petitioner's statements [the Information] should be dismissed in its entirety. Under the Sixth Amendment, counsel was obligated to oppose the government's use of petitioner's statements and was equally obligated to present the breach of the agreement to the court. Counsel yet again failed to represent petitioner in an effective manner and had deprived petitioner of effective assistance of counsel. Petitioner in this case, was as a lamb led to the slaughter, because counsel neglected his duty of loyalty to petitioner.

38

Conclusion

The errors and omissions by counsel herein are so egregious, that petitioner need not demonstrate that counsels actions aff ected the proceedings outcome. See United States v. Cronic, 466 U.S. 648, 658-59 80 L. Ed 2d 657 (1984). Instead, a per se presumption of prejudice arises. The presumption applies when the error or omission involves actual or constructive denial of counsel during a critical stage of the proceedings or where counsel fails to subject the state's case to adversarial testing as petitioner has shown in the instant manner. Cronic, 466 U.S. at 659; Strickland, 466 U.S. at 702 ('Actual or constructive denial of assistance of counsel altogether is legally presumed to result in prejudice"). A criminal defendant must face an adversary proceeding that is governed by intricate rules that to a layperson, would be hopelessly forbidding. An unrepresented defendant is unable to protect the vital interests at stake. Nominal representation does not suffice to render the proceeding constitutionally adequate, and a party whose counsel is unable to provide effective assistance is in no better position than one who has no counsel at all. See e.g. Evitts v. Lucey, 469 U.S. 387, 396 (1985).


A mere pro forma appearance of counsel does not amount to the "assistance of counsel" and "due process of law" that are guaranteed by the United States Constitution. Powell v.

Alabama, 287 U.S. 45 (1932). The assistance of counsel required under the Sixth Amendment was never provided herein. Defense counsel must conscientiously protect his client's interest, undefeated by conflicting considerations. Glasser v. United States, 315 U.S. 60 (1942); McMann v. Richardson, 397 U.S. 759 (1970). Herein, defense counsels' deficient performances rendered the entire proceeding from petitioner's arrest to his final judgment within the Court of Appeals, constitutionally inadequate, in violation of petitioner's right to effective assistance of counsel and his right to due process of law, warranting dismissal of the entire action on 03 Cr. 1277.

WHEREFORE, petitioner respectfully requests of this Court to vacate the conviction and sentence herein, and to dismiss the entire criminal Information on the grounds heretofore argued, or in the alternative, to grant a hearing on the claims made.

Respectfully submitted

Dated: August 16, 2012

*R. Gunn*

Roderick Gunn

Reg No: 55254-054

USP Atwater

United States Penitentiary

P.O. Box, 019001

Atwater, CA 95301.