UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

RODERICK GUNN,

                Petitioner,

     - v -

UNITED STATES OF AMERICA,

                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

          :

          :     12 Civ. 6632 (WHP)
               03 Cr. 1277 (WHP)
          :

          :

          :

          :

          :

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO PETITIONER RODERICK GUNN'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE OR CORRECT SENTENCE

PREET BHARARA
United States Attorney for the
Southern District of New York

John J. O'Donnell
Assistant United States Attorney
 *Of Counsel*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ...................................................................................3

   A.  Gunn's Criminal Conduct And Guilty Plea ..........................................3

   B.  Gunn's Breach Of The Cooperation Agreement .................................7

   C.  Gunn's Motion To Withdraw His Guilty Plea......................................9

      1.  Gunn's Initial Motion .................................................................9

      2.  Gunn's Second Motion .............................................................10

   D.  The Sentencing Proceedings................................................................12

   E.  Gunn's Appeal .....................................................................................13

   F.  The Motion ...........................................................................................14

ARGUMENT ......................................................................................................15

   A.  Applicable Law ....................................................................................15

      1.  Legal Standard Governing A 2255 Petition...............................15

      2.  Standard For Ineffective Assistance Of Counsel Claims...........17

   B.  Claims That Are Procedurally Barred.................................................19

      1.  Claim That The Court Lacked Jurisdiction Over The Case In The Absence Of A Waiver Of Indictment ............................................20

      2.  Claim That The Court Lacked Jurisdiction Over Count Three....................22

         a.  Section 924(c) Is Not Duplicitious ......................................22

         b.  There Was An Adequate Basis For Gunn's Plea To Count Three ........................................................................................24

      3.  Claim That There Was No Factual Basis For Gunn's Guilty Plea To Counts Four and Give Of The Information....................................27

i

C.  Ineffective Assistance Of Counsel Claims ................................................................28

    1.  Failure To Raise Argument On Appeal ......................................................28

    2.  Failure To Raise Claim That The Government Breached The Terms Of
       Gunn's Proffer Agreements ........................................................................32

CONCLUSION.................................................................................................................32

## TABLE OF AUTHORITIES

Page

**Cases**

*Aparicio* v. *Artuz*, 269 F.3d 78 (2d Cir. 2001)........................................................19

*Bell* v. *Cone*, 535 U.S. 685 (2002)........................................................................18

*Blackledge* v. *Allison*, 431 U.S. 63 (1977)...............................................................17

*Bossett* v. *Walker*, 41 F.3d 825 (2d Cir. 1994) ........................................................16

*Bousley* v. *United States*, 523 U.S. 614 (1998)....................................................16, 19

*Chang* v. *United States*, 250 F.3d 79 (2d Cir. 2001) ............................................17, 18

*Coppedge* v. *United States*, 269 U.S. 438 (1962) .....................................................33

*Cuoco* v. *United States*, 208 F.3d (2d Cir. 2000)..................................................19, 24

*Der-Rone Chour* v. *INS*, 578 F.2d 464 (2d Cir. 1978) ................................................28

*Edwards* v. *Carpenter*, 529 U.S. 446 (2000) ...........................................................16

*Forbes* v. *United States*, 574 F.3d 101 (2d Cir. 2009)...........................................19, 21

*Graziano* v. *United States*, 83 F.3d 587 (2d Cir. 1996)..............................................15

*Harrington* v. *Richter*, 131 S. Ct. 770 (2011) .........................................................19

*Harris* v. *United States*, 09 Civ. 4380 (ARR),
    2010 WL 2710600 (E.D.N.Y. 2010) ...........................................................24

*Haouari* v. *United States*, 510 F.3d 350 (2d Cir. 2007) .............................................17

*Kimmelman* v. *Morrison*, 477 U.S. 365 (1986) .......................................................18

*Mayo* v. *Henderson*, 13 F.3d 528 (2d Cir. 1994)..................................................19, 31

*Murray* v. *Carrier*, 477 U.S. 478 (1986) ................................................................16

*Perales* v. *Casillas*, 903 F.2d 1043 (5th Cir. 1990)..................................................28

*Puglisi* v. *United States*, 586 F.3d 209 (2d Cir. 2009)...............................................17

*Raines* v. *United States*, 423 F.2d 526 (4th Cir. 1970).............................................17

*Reyes-Velazquez* v. *United States*, 09 Civ. 1626 (ADC),
    2012 WL 4483679 (D.P.R. 2012) ...................................................................23

*Rosario* v. *United States*, 164 F.3d 729 (2d Cir. 1998) .....................................16, 27

*Strickland* v. *Washington*, 466 U.S. 668 (1984) .......................................*passim*

*Tankleff* v. *Senkowski*, 135 F.3d 232 (2d Cir. 1998)....................................33

*United States* v. *Aiello*, 814 F.2d 109 (2d Cir. 1987) ...................................17

*United States* v. *Andrades*, 169 F.3d 131 (2d Cir. 1999)..............................25

*United States* v. *Arreola*, 467 F.3d 1153 (9th Cir. 2006) ........................23, 24

*United States* v. *Atandi*, 376 F.3d 1186 (10th Cir. 2004) ............................28

*United States* v. *Barret*, 10 Cr. 809 (S-3) (KAM),
    2011 WL 6780901 (E.D.N.Y. 2011) .......................................................24

*United States* v. *Carty*, 264 F.3d 191 (2d Cir. 2001)....................................31

*United States* v. *Combs*, 369 F.3d 925 (6th Cir. 2004).................................22

*United States* v. *Davis*, 689 F.3d 179 (2d Cir. 2012)......................................9

*United States* v. *DeJesus-Abad*, 263 F.3d 5 (2d Cir. 2001)..........................25

*United States* v. *Ferguson*, 758 F.2d 843 (2d Cir. 1985)..............................20

*United States* v. *Fernandez*, 443 F.3d 19 (2d Cir. 2006).........................*passim*

*Unites States* v. *Frady*, 456 U.S. 152 (1982) .........................................16, 17

*United States* v. *Garcia*, 920 F.2d 153 (2d Cir. 1990)..................................30

*United States* v. *Haynes*, 582 F.3d 686 (7th Cir. 2009)................................23

*Unites States* v. *Imtiaz*, 81 F.3d 262 (2d Cir. 1996) ....................................30

*United States* v. *Jackson*, 749 F. Supp. 2d 19 (N.D.N.Y. 2010) ..................24

*United States* v. *Kirsh*, 54 F.3d 1062 (2d Cir. 1995) ...................................18

*United States* v. *Lopez*, 385 F.3d 245 (2d Cir. 2004) ..................................10

*United States* v. *Macklin*, 523 F.2d 193 (2d Cir. 1975) ........................................................20

*United States* v. *Massotto*, 73 F.3d 1233 (2d Cir. 1996) ......................................................27

*United States* v. *Medina*, 32 F.3d 40 (2d Cir. 1994) ............................................................26

*United States* v. *Pipola*, 83 F.3d 556 (2d Cir. 1996) ...........................................................26

*United States* v. *Wilkerson*, 361 F.3d 717 (2d Cir. 2004) ....................................................26

*Yesil* v. *Reno*, 958 F. Supp. 828 (S.D.N.Y. 1997) ...............................................................28

*Yick Man Mui* v. *United States*, 614 F.3d 50 (2d Cir. 2010) ................................................16

## **Rules**

18 U.S.C.§ 922(g)(5) ........................................................................................................9, 27

18 U.S.C.§ 924(c) ..........................................................................................................*passim*

28 U.S.C.§ 1915(a)(3).........................................................................................................33

28 U.S.C.§ 2255.............................................................................................................*passim*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                              :

RODERICK GUNN,
                                              :        12 Civ. 6632 (WHP)
                    Petitioner,               :        03 Cr. 1277 (WHP)
                                              :
         - v -
                                              :

UNITED STATES OF AMERICA,
                                              :
                    Respondent.
                                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO PETITIONER RODERICK GUNN'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE OR CORRECT SENTENCE

### PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in response to the motion filed by Petitioner Roderick Gunn ("Gunn") for relief pursuant to Title 28, United States Code, Section 2255 (the "Motion").

Information 03 Cr. 1277 (WHP) ("the Information") was filed on October 23, 2003, charging Gunn in six counts with: (1) conspiring to commit robberies of narcotics dealers from in or about summer 2001 through in or about summer 2002, in violation of Title 18, United States Code, Section 1951; (2) committing a robbery of a narcotics dealer on Baychester Avenue in the Bronx in December 2001, in violation of Title 18, United States Code, Sections 1951 and 2; (3) aiding and abetting the use, carrying and brandishing of firearms during and in relation to the crimes of violence charged in Counts One and Two, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2; (4) conspiring to distribute an unspecified quantity of marijuana between in or about 2002 and in or about 2003, in violation of Title 21, United States

Code, Section 846; and (5, 6) two counts of illegal firearms possession, on April 14, 2003, and May 1, 2003, respectively, each in violation of Title 18, United States Code, Section 922(g)(5).

On December 19, 2003, Gunn pleaded guilty, pursuant to a cooperation agreement, to all six counts in the Information.

On March 17, 2010, this Court sentenced Gunn to a term of 141 months' incarceration, to be followed by 5 years' supervised release, and imposed a $600 mandatory special assessment.

Gunn appealed his conviction and sentence.  By summary order dated April 15, 2011, the Court of Appeals affirmed Gunn's conviction and his term of imprisonment.  *United States* v. *Gunn,* 419 Fed. Appx. 106 (2d Cir. 2011).  On October 3, 2011, the United States Supreme Court denied Gunn's petition for a writ of certiorari.  *Gunn* v. *United States*, 132 S. Ct. 302 (2011).  Gunn is currently serving his sentence.

Gunn filed a *pro se* 2255 motion on or about August 28, 2012.  Gunn's Motion asserts five claims for relief: (1) the Court lacked jurisdiction over the Information filed in the underlying criminal case because Gunn did not waive indictment in open court; (2) the Court lacked jurisdiction over Count Three of the Information because the crime charged in that count was duplicitous and because there was not an adequate factual basis for Gunn's guilty plea to that count; (3) Gunn's guilty plea was inadequate as to Counts Five and Six of the Information; (4) Gunn's trial and appellate counsel were ineffective; and (5) Gunn received ineffective assistance of counsel because counsel failed to assert that the Government breached the terms of the proffer agreement that Gunn had executed in connection with his proffers.  For the reasons set forth below, the Motion should be denied without a hearing.

## STATEMENT OF FACTS

**A.    Gunn's Criminal Conduct And Guilty Plea**

On or about June 25, 2003, Gunn was arrested on the basis of a criminal complaint charging him with being an illegal alien in possession of a firearm in and affecting interstate commerce, in violation of Title 18, United States Code, Section 922(g)(5). Shortly after his arrest, Gunn, accompanied by counsel, Roger Adler, Esq., met with the Government in a series of proffer sessions in an effort to secure a cooperation agreement with the Government. (A. 99-100).[1] During his proffer sessions, among other things, Gunn described his involvement in a series of home invasion robberies of narcotics traffickers, the use of firearms in furtherance of those robberies, his possession of firearms, and his dealings in marijuana. (*See, e.g.*, A. 101-20).

After numerous proffer sessions, on or about October 23, 2003, the Government filed Information 03 Cr. 1277 (WHP), which charged Gunn in six counts with Hobbs Act robbery charges, narcotics conspiracy charges, and firearms charges. (A. 128-32). The Information was filed with Gunn's consent, as evidenced by a waiver of Indictment dated October 23, 2003 signed by Gunn and his attorney, Mr. Adler. (Dkt. No. 10; a copy of the waiver of indictment is attached as Exhibit A). The waiver of indictment stated as follows:

> The above-named defendant, who is accused of violating Title 18, United States Code, Sections 1951, 924(c)(1)(A)(ii), and 922(g)(5); and Title 21, United States Code, Section 846, being advised of the nature of the charge and of his rights,

---

[1]    For the Court's convenience, the Government is providing the Court with a copy of Gunn's brief on appeal and the appendix filed therewith. "App. Br." refers to Gunn's brief on appeal and "A." refers to the appendix. "PSR" refers to the Presentence Investigation Report prepared by the United States Probation Office ("Probation Office") in connection with Gunn's sentence. "Gunn Mot." refers to Gunn's Motion, "Gunn Mem." refers to Gunn's memorandum in support of the Motion, and "Gunn Dec." refers to Gunn's declaration in support of the Motion.

hereby waives, in open Court, prosecution by indictment and consents that the
proceeding may be by way of information instead of by indictment.

The waiver of indictment was witnessed by Mr. Stanley Pugliesi, who was the Court's Deputy

Clerk in December 2003.[2]

On December 19, 2003, Gunn pled guilty to the Information, pursuant to a

cooperation agreement (the "Agreement").  (A. 121-27, 133-59).  At the beginning of the plea

proceeding, the Court marked the Agreement as Court Exhibit 1 and marked a completed

"Advice of Rights" form as Court Exhibit 2.  (A. 134-35).  After administering the oath to Gunn,

the Court confirmed that Gunn understood the nature of the proceeding and that Gunn was

competent to enter an informed guilty plea.  (A. 135-38).  As part of this assessment, the Court

asked Gunn if he had a full opportunity to discuss his case with his counsel and the consequences

of entering a guilty plea; Gunn replied affirmatively.  (A. 137-38).  Gunn told the Court that he

was satisfied with his attorney and his representation of him in this matter.  (A. 138).

The Court then advised Gunn of the rights he would waive by pleading guilty.  (A.

138-40).  Among other things, the Court informed Gunn that he had a right: (1) to plead not

guilty and to proceed, with the assistance of counsel, to a trial by jury; (2) to have the

Government bear the burden of proving his guilt beyond a reasonable doubt by competent

evidence at a trial; (3) to cross-examine the Government's witnesses at trial; (4) to have

compulsory process used to compel witnesses to testify in his defense; and (5) to testify himself

---

[2]       Although the Government has so far been unable to obtain a transcript of the
conference on October 23, 2003, the available evidence establishes that Gunn's waiver occurred
at a proceeding before this Court on that date.  First, the fact that Mr. Pugliese witnessed the
waiver is consistent with the normal practice in this district of having the court's Deputy Clerk
witness a waiver of indictment in open court.  Second, the United States Marshal's Service
("USMS") has advised the Government that Gunn was produced for an appearance before this
Court at 12:00 noon on October 23, 2003.  (A copy of an email from the USMS to the
undersigned confirming the production is attached as Exhibit B).

if he so desired.  (A. 139-40).  The Court also explained that Gunn would waive these rights if he pled guilty.  (Id.)  Gunn affirmed that he understood each of the rights as described by the Court, as well as the fact that he was waiving such rights by entering a plea of guilty.  (Id.)

The Court next reviewed the charges in the Information, and Gunn confirmed that he had reviewed the charges with defense counsel before the hearing.  (A. 141-42).  The Court explained to Gunn that he had the right to be charged by Indictment rather than by Information, and Gunn explicitly waived that right voluntarily and knowingly.  (A. 142-43)  The Government then set forth each of the essential elements of the six counts contained in the Information.  (A. 143-46).  Gunn confirmed that he understood that at a trial the Government would have to prove each of the elements of the crimes charged by competent evidence and beyond a reasonable doubt.  (A. 146).

The Court advised Gunn of the maximum and minimum mandatory penalties he faced as a consequence of pleading guilty to each Count of the Information, as well as the collateral consequences of pleading guilty, including deportation.  (A. 146-50).  The Court inquired if Gunn had discussed the Sentencing Guidelines and their application to his case with his attorney, and Gunn confirmed that he had, but made clear that Gunn would not be allowed to withdraw his guilty plea if his sentence was different from what he expected.  (A. 150-51).  The Court also thoroughly reviewed the Agreement with Gunn.  (A. 151-53).  Gunn confirmed that he read and discussed the Agreement with defense counsel before signing it, that he fully understood the Agreement at the time he signed it, and that the Agreement constituted the complete and total understanding among himself, his attorney and the Government.  (Id.)  Gunn also confirmed that no one had threatened him or forced him to plead guilty.  (A. 152-53).

The Court then asked defense counsel if there was any reason why Gunn should

not be permitted to plead guilty, and Mr. Adler responded, in Gunn's presence:

> No your Honor.  I've reviewed the applicable facts as known and law as handed down by the courts, and it is my belief that this represents a wise and strategic decision by this defendant to bring closure to his criminal exposure and at a time and under the circumstances that provide the greatest likelihood for a shorter sentence that would be imposed were he to proceed to trial.  I believe this is a wise decision and I've concurred [in] it.

(A. 153).

The Court asked counsel for both parties if an adequate factual basis existed to

support the plea, and both counsel answered affirmatively.  (*Id.*)  The Court then asked Gunn to

state what he did in connection with each of the crimes to which he was pleading guilty, and

Gunn provided a factual basis to support each of the elements of the six counts in the

Information:

> During the time period from the summer of 2001 up through the summer of 2002 in the Southern District of New York and other locations, I conspired with others, with other individuals to assist them in robbing other individuals of money and property in a fashion or manner which impacted upon interstate commerce as that term has been constructed by the courts.

> My role generally consisted of tipping off the perpetrators to a potential robbery victim who has substantial sum of cash, and due to the manner in which the money was earned were unlikely to complain to the police.  Most of the robberies was committed in December 2001 in the vicinity of Baychester Avenue in the Bronx.

> In addition, during the period between the summer of 2001 and the summer of 2002, firearms were brandished during the robberies which were committed.

> Furthermore, during the time period of 2002, 2003, I conspired with others to possess and distribute marijuana.  On two occasions during 2002 and 2003, I sold 16 pounds of marijuana.

> Finally, on April 4, 2003, and on May 1, 2003, I possessed a loaded Glock handgun as charged in Count 5 and a Ruger 9 mm as charged in Count 6, knowing that my possession of these weapons was unlawful.

I deeply regret my unlawful conduct and accept full responsibility for it.

(A. 153-54).  The Government provided a summary of its evidence, and then Gunn formally pled

guilty to each of the six Counts of the Information.  (A. 155-56).  Gunn's final responses to the

Court confirmed that he was pleading guilty to each of the crimes charged in the Information

because he was, in fact, guilty of those crimes, and that he was pleading guilty voluntarily and of

his own free will.  (A. 156-57).

Based on the foregoing allocution, this Court accepted Gunn's guilty pleas and

adjudged him guilty of each of the crimes charged in the Information.  (A. 157).

**B.**    **Gunn's Breach Of The Cooperation Agreement**

After his plea, Gunn continued to be debriefed by Government agents and

prosecutors.  (A. 160-62).  Because Gunn had pleaded guilty pursuant to a cooperation agreement,

the focus of the debriefings was on other targets of the investigation.  Gunn was asked a series of

questions about an individual known as "B" or "Mr. B" and a robbery that occurred on October

31, 2002 in Elmont, New York, during which Stephanie Laing was killed (the "Elmont

Robbery").  In earlier debriefing sessions, Gunn had stated that he knew a man named "B" and

that "B" had participated in a robbery and murder on Long Island in the fall of 2002, but Gunn

had not disclosed that he had any involvement with the Elmont Robbery.

On October 25, 2004, the Government debriefed Gunn again, after it learned

about a January 21, 2003 robbery on Wickham Avenue in the Bronx, New York, during which

Gary Grey was killed ("Wickham Robbery"), and after it learned that the person known as "B"

was involved in that murder.  In addition, the Government had identified "B" as Alton Davis

("Davis").  The Government decided to debrief Gunn to determine whether he knew anything

about the Wickham Robbery and whether he could confirm the identification of Davis.  At the

time, the Government had no reason to suspect that Gunn was involved in the Wickham Robbery, or that Gunn had withheld information from the Government.

Gunn identified Davis and provided additional information about the Elmont Robbery. When the agents asked if Gunn knew anything about the Wickham Robbery, Gunn admitted that he had lied to the Government in prior meetings and that he had participated in that robbery. The meeting was immediately halted and Gunn's counsel, Christopher Booth, Esq., was notified.[3] (A. 163-65).

On October 28, 2004, Gunn and Mr. Booth met with the Government. At the outset of the meeting, Gunn reviewed a proffer agreement, indicated that he understood its terms, and executed the agreement. (A. 166-67). At this meeting, Gunn described in detail his participation in the Wickham Robbery. (A. 168-73). Gunn attended subsequent debriefing sessions in order to try to salvage his cooperation and disclosed twelve other drug-related robberies and burglaries in which he had participated and that he had failed to disclose. In addition, Gunn described his involvement in a 2001 cocaine conspiracy, during which Gunn picked up narcotics couriers at New York City airports and delivered cocaine to others; as with the additional robberies, Gunn had previously withheld information concerning this criminal conduct. (A. 174-88).

By a letter dated August 19, 2005, the Government advised Gunn's counsel that Gunn was in breach of his cooperation agreement, and that the Government was assessing the

---

[3]     On April 5, 2004, Mr. Booth had entered a notice of appearance as retained counsel on behalf of Mr. Gunn. (A. 5).

possibility of rehabilitating Gunn as a cooperating witness.  (A. 205-06).  The Government later

advised Gunn's attorney that cooperation was no longer an option for Gunn.[4]

## C.    Gunn's Motions To Withdraw His Guilty Plea

### 1.    Gunn's Initial Motion

On March 23, 2006, Gunn, through Mr. Booth, filed a motion to withdraw his

guilty plea.  (A. 207-24).  In connection with that motion, Gunn submitted an affidavit in which

he asserted: (1) that he was unaware of the charges and the terms of his plea agreement and that

his then-counsel offered him constitutionally deficient assistance in failing to explain them to

him; and (2) that his plea was "unknowing and involuntary" because at the time of his initial

arrest for illegal firearm possession, his then-counsel failed to advise him that he had an

affirmative defense to the charge based upon the argument that Gunn was in legally present in the

United States and was therefore not an "illegal alien" within the meaning of 18 U.S.C. §

922(g)(5).  (A. 217-24).

-------------------------

[4]       On August 16, 2007, the Grand Jury returned Indictment S1 06 Cr. 911 (WHP), which charged Gunn, Davis, Derrilyn Needham, and Ronald Knibbs, with Hobbs Act robbery conspiracy, substantive Hobbs Act robbery charges, firearms and murder charges, and narcotics conspiracy.  These charges stemmed from their participation in a series of Hobbs Act robberies, including the Elmont Robbery (where Davis shot and killed Stephanie Laing) and the Wickham Robbery (where Davis shot and killed Gary Grey).   On April 19, 2010, Gunn and Davis proceeded to trial.  After a two-week trial, Gunn was convicted of Hobbs Act robbery conspiracy, narcotics conspiracy, and substantive Hobbs Act robbery, firearms, and murder charges that related to the Wickham Robbery.  Gunn was acquitted of a substantive Hobbs Act robbery charge that related to the Elmont Robbery, and was not charged in the counts related to the murder of Stephanie Laing.  Davis was convicted on all counts.  On August 20, 2010, Gunn and Davis were each sentenced principally to life imprisonment.  On August 8, 2012, the Second Circuit affirmed Davis's and Gunn's convictions and sentences.  *United States* v. *Davis*, 689 F.3d 179 (2d Cir. 2012) and 491 Fed. Appx. 219 (2d Cir. 2012).

On May 30, 2007, this Court denied Gunn's motion to withdraw his guilty plea.[5] Considering the factors set forth in *United States* v. *Lopez*, 385 F.3d 245, 253 (2d Cir. 2004), the Court found that there was no "fair or just reason to permit withdrawal" of the guilty plea.  The Court found that Gunn's delay of two and one-half years before bringing the motion weighed against permitting withdrawal.  (May 30, 2007 Order, at 5.)  Further, the Court found that Gunn's failure to assert that he was innocent of the charges to which he pleaded guilty also weighed against allowing him to withdraw his guilty plea.  (*Id.*)  Finally, the Court found that the Government would suffer significant prejudice if the Court allowed Gunn to withdraw his guilty plea.  (*Id.*)  With respect to Gunn's claims that he did not understand that terms of his cooperation agreement, the Court found that claim unpersuasive since it was contradicted by his statements to the Court during his plea allocution.  (*Id.* at 6-7.)

The Court also rejected Gunn's claim that his counsel was ineffective in recommending that Gunn plead guilty pursuant to the cooperation agreement in light of an affirmative defense that Gunn claims to have had to the weapons possession charge against him. This Court reviewed evidence submitted by the Government that Gunn had been removed from the United States in 1999 after an administrative hearing and prohibited from entering for five years, and found that "as a factual matter, the affirmative defense was likely unavailable." (*Id.* at 7).  The Court also found that it is "questionable whether the filing – or even approval – of an I-130 visa application *ipso facto* renders an individual's presence in the United States legal. (*Id.* at 7-8).  Finally, the Court noted that Gunn's decision to enter into a cooperation agreement was made after numerous proffers and after the Government had lodged additional charges against

---

[5]    The Court's Order was signed on May 30, 2007, but was entered on December 13, 2007.

him.  Thus, the Court concluded that it was unlikely that the availability of an affirmative defense to one charge would have changed Gunn's decision.  (*Id.*)

### 2.     Gunn's Second Motion

On or about July 25, 2007, Gunn filed a *pro se* motion for reconsideration of the Court's decision, this time alleging that counsel who represented him in the original motion was ineffective.  The District Court appointed new counsel for Gunn, Richard Palma, Esq.,[6] who filed a letter memorandum of law supplementing Gunn's *pro se* motion and requesting that Gunn be permitted to withdraw his plea of guilty to Count Three of the Information on the ground that the record does not support a finding that there was a factual basis for the guilty plea.  (A. 12-31, 32-46, 47-56).

Nearly one year later, on January 23, 2009, Mr. Palma filed additional papers in support of Gunn's motion, which requested that the Court treat the motion as a second motion to withdraw Gunn's guilty plea to all the charges in the Information.  (A. 57-76).  This submission reiterated Gunn's contention that his plea was not knowingly and voluntarily entered because Gunn's counsel at his plea hearing did not adequately explain the charges or the plea agreement to Gunn.  Gunn supplemented his prior affidavit with evidence that the Bureau of Prisons records for the facility where Gunn was detained did not contain any indication that Mr. Adler had visited or telephoned him during the weeks preceding his plea, *i.e.*, November or December 2003.  (A. 71, 75).  Gunn also argued that the Government would not be prejudiced if Gunn were allowed to withdraw his guilty plea because its continued investigation into the activities of

---

[6]     Mr. Palma represented Gunn in this matter through sentencing in this Court and on appeal.

Gunn's robbery crew had led to the development of additional evidence against Gunn.  (A. 73-74).

By order dated April 8, 2009, the Court denied Gunn's renewed motion to withdraw his guilty plea, finding that the Court's thorough and detailed allocution of Gunn cured any alleged misrepresentations by Gunn's counsel or misunderstandings by Gunn regarding his potential sentence.  (A. 77-80).  The Court noted that the fact that Bureau of Prisons records did not indicate any telephone calls or visits by Gunn's attorney in November or December 2003 had "no impact on the thoroughness of his allocution." (A. 79).  Moreover, the Court recognized that Gunn had participated in proffer sessions with his attorney and had ample opportunity to discuss his plea with his attorney.  (*Id*.).

The Court found that, since Gunn had failed to show sufficient grounds to justify withdrawal of his plea, the Government was not required to demonstrate prejudice. Nevertheless, the Court recognized that building and trying a case against Gunn six years after he pled guilty and eight years after the crimes were committed would require a significant expenditure of government resources.  (A. 79).  Moreover, even though the Government may have obtained additional evidence against Gunn, there was a risk that evidence and witnesses available to the government in 2003 may not be available to it in 2009.  (*Id*.).

D.      **The Sentencing Proceedings**

Gunn appeared for sentencing on March 9 and 17, 2010.  (A. 225-49, 254-78). The Court reviewed the Presentence Report and written submissions from the parties (A. 81-209, 250-53), and heard extensively from counsel and from Gunn.  The Court found that the total offense level was 25 and the sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") was 57 to 71 months imprisonment, which must be followed by a

mandatory consecutive term of 84 months' imprisonment for Gunn's conviction for violating 18 U.S.C. § 924(c).  (A. 267-71).

The Court sentenced Gunn to a total term of 141 months' imprisonment, to be followed by a term of five years' supervised release, and imposed a mandatory special assessment of $600. (A. 275-77).  In imposing sentence, the Court considered the seriousness of the offense, which involved "very grave crimes" such as armed robberies, narcotics offenses, and firearms offenses.  The Court specifically considered Gunn's argument, premised upon *United States* v. *Fernandez*, 443 F.3d 19 (2d Cir. 2006), that Gunn should receive a reduced sentence based upon the Government's use of Gunn's information to charge other people before the Government learned of Gunn's deception.  (A. 271-74).  The Court ultimately declined to give Gunn a lower sentence based upon his failed cooperation, finding that "[i]n the analysis of the equities, the defendant's half-truths and intentional omissions to the government outweighed the helpful information that he provided to the Government that led to numerous arrests and, at least, three indictments."  (A. 274).

**E.    Gunn's Appeal**

Represented by Mr. Palma, Gunn appealed his conviction and sentence, raising three grounds.  First, Gunn argued that his plea of guilty to Counts Two and Four of the Information (charging Hobbs Act robbery conspiracy and narcotics conspiracy, respectively), must be vacated because there was not an adequate factual basis for his convictions on those counts.  (App. Br. 19-23).  The Court of Appeals found that Gunn's statements at his plea allocution were sufficient to establish a factual basis for his plea to those charges. *Gunn*, 419 Fed. Appx. at 108.

Second, Gunn contended that the District Court erred in denying his motion to withdraw his guilty plea to the Information.  On appeal, Gunn argued that he should have been permitted to withdraw his appeal because his attorney was constitutionally ineffective.  Specifically, Gunn claimed that his counsel failed to explain the charges or the plea agreement to Gunn.  (App. Br. 26-28).  The Court of Appeal rejected this claim, noting that, prior to his guilty plea, Gunn met with the Government for five proffer sessions, and Gunn's attorney was present at each meeting.  Moreover, the Court found that this court had established during the Rule 11 colloquy, that Gunn had "a full opportunity to discuss [his] case [with his counsel] and to discuss the consequences of entering a plea of guilty," and that Gunn was satisfied with his counsel's representation.  Based on this record, the Second Circuit found that Gunn could not meet the "heavy burden" of establishing that his plea was involuntary or that this Court abused its discretion in denying Gunn's motion to withdraw his plea.  *Gunn*, 419 Fed. Appx. at 109.

Third, Gunn challenged the sentence of 141 months' imprisonment, claiming it was both procedurally and substantively unreasonable because the Court did not give Gunn a reduced sentence based on the information he provided to the Government prior to Gunn's admitted breach of his cooperation agreement.  (App. Br. 29-34).  The Second Circuit recognized that this Court had considered Gunn's arguments, and found that the sentence was substantively reasonable.  *Id.* at 109-10.

On October 3, 2011, the United States Supreme Court denied Gunn's petition for a writ of certiorari.  *Gunn* v. *United States*, 132 S. Ct. 302 (2011).

**F.      The Motion**

Gunn filed the present *pro se* 2255 motion on or about August 28, 2012.  Gunn's Motion asserts five claims for relief: (1) the Court lacked jurisdiction over the Information filed

-14-

in the underlying criminal case because Gunn did not waive indictment in open court; (2) the

Court lacked jurisdiction over Count Three of the Information because the crime charged in that

count was duplicitous and because there was not an adequate factual basis for Gunn's guilty plea

to that count; (3) Gunn's guilty plea was inadequate as to Counts Five and Six of the

Information; (4) Gunn's trial and appellate counsel were ineffective; and (5) Gunn received

ineffective assistance of counsel because counsel failed to assert that the Government breached

the terms of the proffer agreement that Gunn had executed in connection with his proffers.

## ARGUMENT

### Gunn's Motion Lacks Merit And Should Be Dismissed Without A Hearing

**A.      Applicable Law**

**1.      Legal Standard Governing A 2255 Motion**

28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress
> claiming the right to be released upon the ground that the sentence was imposed in
> violation of the Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the sentence was in excess of
> the maximum authorized by law, or is otherwise subject to collateral attack, may
> move the court which imposed the sentence to vacate, set aside or correct the
> sentence.

*Id.* Relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the

sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently

results in [a] complete miscarriage of justice." *Graziano* v. *United States*, 83 F.3d 587, 590 (2d

Cir. 1996) (*per curiam*) (internal quotation marks and citation omitted).  "Because collateral

challenges are in tension with society's strong interest in the finality of criminal convictions, the

courts have established rules that make it more difficult for a defendant to upset a conviction by

collateral, as opposed to direct, attack." *Yick Man Mui* v. *United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks and citations omitted).

A Section 2255 motion is not a substitute for direct appeal. *Bousley* v. *United States*, 523 U.S. 614, 621-22 (1998); *United States* v. *Frady*, 456 U.S. 152, 164 (1982) ("Once the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially where, as here, he already has a fair opportunity to present his federal claims to a federal forum. . . . [A] final judgment commands respect."). Thus, when a defendant fails to raise an issue on appeal, he or she is procedurally barred from raising those issues on a Section 2255 motion that could have been raised on appeal, unless the movant shows either: (1) "cause" for failing to bring a direct appeal and "prejudice" arising from the failure; or (2) that he or she is "actually innocent" of the offense of conviction.[7] *Bousley*, 523 U.S. at 622; *see, e.g.*, *Rosario* v. *United States*, 164 F.3d 729, 732 (2d Cir. 1998).

"Cause" is measured by a stringent standard of diligence, and is "something external" to the movant that "cannot be fairly attributed to him." Attorney ignorance or inadvertence is not cause, *see, e.g.*, *Murray* v. *Carrier*, 477 U.S. 478, 486-87 (1986), although constitutionally ineffective assistance in failing properly to preserve the claim for review may constitute "cause." *Edwards* v. *Carpenter*, 529 U.S. 446, 451 (2000). "Cause" may be demonstrated with a showing that the factual or legal basis for a claim was not reasonably available to counsel, that interference by Government officials made pursuit of appeal impracticable, or that the failure to appeal was the result of ineffective assistance of counsel. *Murray* v. *Carrier*, 477 U.S. at 488; *see also Bossett* v. *Walker*, 41 F.3d 825, 829 (2d Cir. 1994).

---

[7] The "actual innocence" test does not apply because Gunn does not – and cannot – claim that he is "actually innocent" of the charged crimes.

In order to satisfy the prejudice prong, a 2255 movant "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

To warrant a hearing on a motion under § 2255, a petitioner's "application must contain assertions of fact that [the] petitioner is in a position to establish by competent evidence." *United States* v. *Aiello*, 814 F.2d 109, 113 (2d Cir. 1987) (citations omitted). The court must then determine whether, viewing the record "in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief." *Puglisi* v. *United States*, 586 F.3d 209, 213 (2d Cir. 2009).

However, "[a]iry generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing." *Aiello*, 814 F.2d at 113-14; *Haouari* v. *United States*, 510 F.3d 350, 354 (2d Cir. 2007). Nor is the Court required to presume the credibility of factual assertions "where the assertions are contradicted by the record in the underlying proceeding." *Puglisi*, 586 F. 3d at 214. Moreover, if it "plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." *Puglisi*, 586 F. 3d at 213 (citations omitted).

Depending on the allegations in the petition, a "court may use methods under [§] 2255 to expand the record without conducting a full-blown testimonial hearing." *Chang* v. *United States*, 250 F.3d 79, 86 (2d Cir. 2001) (citing *Blackledge* v. *Allison*, 431 U.S. 63, 81-82 (1977)). Potential methods available to a court to supplement the record include "'letters,

documentary evidence, and, in an appropriate case, even affidavits.'" *Chang*, 250 F.3d at 86

(quoting *Raines* v. *United States*, 423 F.2d 526, 529-30 (4th Cir. 1970)).

### 2.  Standard For Ineffective Assistance Of Counsel Claims

To establish his claim of ineffective assistance of counsel, Gunn would have to

show that the performance of his attorneys in the district court and on appeal fell below "an

objective standard of reasonableness" under "prevailing professional norms" and that Gunn

suffered prejudice as a result of the representation that he received. *Strickland* v. *Washington*,

466 U.S. 668, 687-88, 693-94 (1984).   A court considering a claim of ineffective assistance must

apply a "strong presumption" that counsel's representation was within the "wide range" of

reasonable professional assistance. *Id.* at 689; *see Bell* v. *Cone*, 535 U.S. 685, 698 (2002).  The

challenger's burden is to show "'that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington* v.

*Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687).  "Strategic choices

made after thorough investigation of law and facts relevant to plausible options are virtually

unchallengeable." *Strickland*, 466 U.S. at 690; *see also United States* v. *Kirsh*, 54 F.3d 1062,

1071 (2d Cir. 1995).  Moreover, a court evaluating counsel's performance must do so from

counsel's perspective at the time of the alleged error and in light of the circumstances. *See*

*Strickland*, 466 U.S. at 689; *see also Kimmelman* v. *Morrison*, 477 U.S. 365, 380 (1986).  In so

doing, the reviewing court must make every effort to "eliminate the distorting effects of

hindsight." *Strickland*, 466 U.S. at 689; *see also Harrington*, 131 S. Ct. at 788 ("the standard for

judging counsel's representation is a most deferential one").

In addition to proving that counsel's performance was objectively deficient, a

petitioner must also prove that counsel's errors actually prejudiced his case.  "It is not enough 'to

show that the errors had some conceivable effect on the outcome of the proceeding.'"
*Harrington*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 693).  Rather, "[a] reasonable
probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466
U.S. at 694.

   A claim that appellate counsel was ineffective can succeed only if "counsel
omitted significant and obvious issues while pursuing issues that were clearly and significantly
weaker" and "there was a reasonable probability that the [omitted claim] would have been
successful."  *See Mayo* v. *Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (internal quotation marks
omitted).  "To prove ineffective assistance of appellate counsel, 'it is not sufficient for the habeas
petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not
have a duty to advance every nonfrivolous argument that could be made.'"  *See Cuoco* v. *United
States*, 208 F.3d at 27, 32 (2d Cir. 2000) (quoting *Mayo*, 13 F.3d at 533).  Moreover, "[i]t is well
established that '[t]he failure to include a meritless argument does not fall outside the wide range
of professionally competent assistance to which [a defendant is] entitled.'"  *Forbes* v. *United
States*, 574 F.3d 101, 106 (2d Cir. 2009) (quoting *Aparicio* v. *Artuz*, 269 F.3d 78, 99 (2d
Cir.2001) (internal quotation marks omitted)).

## B. Claims That Are Procedurally Barred

   Gunn did not raise on direct appeal his claim that the court lacked jurisdiction
because he did not waive indictment or his claims that the convictions on Counts Three, Five and
Six should be vacated on jurisdictional and insufficiency grounds.  Gunn is therefore
procedurally barred from raising these claims on a motion under § 2255 unless he can
demonstrate "cause" for his procedural default and actual prejudice resulting therefrom.  *See
Bousley*, 523 U.S. at 622.  Gunn seeks to avoid the procedural bar by alleging that his appellate

counsel was constitutionally ineffective for failing to raise these claims before the court of appeals. *See* Gunn Mem. 25-26, 29-31. As set forth below, these claims are so devoid of merit that Gunn cannot establish that counsel's decision not to raise them on appeal was objectively unreasonable or that the result of his appeal would have been different had the claims been raised, as Gunn is required to do in order to satisfy the *Strickland* standard for ineffective assistance of counsel. Accordingly, the claims are barred. Moreover, in any event, even if the Court reached the merits of the defaulted claims, the Court should reject them as meritless.

1.    **Claim That The Court Lacked Jurisdiction Over The Case In The Absence of A Waiver Of Indictment**

Gunn claims that the Court lacked jurisdiction over the case because there is no evidence that Gunn validly waived his Fifth Amendment right to be charged by an indictment issued by the Grand Jury. This claim is factually incorrect.

Rule 7(b) of the Federal Rules of Criminal Procedure provides for waiver of indictment: "An offense which may be punished by imprisonment for a term exceeding one year . . . may be prosecuted by information if the defendant, after he has been advised of the nature of the charge and of his rights, waives in open court prosecution by indictment." The Second Circuit has observed that "[w]aiver of indictment is an act clothed in formality." *United States* v. *Ferguson*, 758 F.2d 843, 850-51 (2d Cir. 1985). Although no particular catechism is prescribed, the waiver must be made in open court, the defendant must be informed of the nature of and the cause for the accusation, and the court must be satisfied that the defendant waives his rights knowingly, intelligently and voluntarily. *See id.*; *United States* v. *Macklin*, 523 F.2d 193, 196 (2d Cir. 1975).

Contrary to Gunn's claim, he voluntarily waived indictment and agreed to the Government proceeding by information. The Information in this case was filed on October 23,

2003, pursuant to the waiver of indictment signed by Gunn and his attorney, and witnessed by this Court's Deputy Clerk.  The plain language of the waiver form establishes that Gunn was aware of the nature of the charges and knowingly and voluntarily waived, in open Court, his right to have the case presented to a Grand Jury.  (*See* Exhibit A).  Moreover, contrary to Gunn's claim that he did not waive Indictment in open court, the available evidence suggests that the waiver occurred before this Court.  This Court's Deputy Clerk witnessed the waiver and the USMS records indicate that Gunn was produced for an appearance before this Court on October 23, 2003.  (*See* Exhibit B).

Moreover, during his guilty plea on December 19, 2003, the Court reiterated to Gunn the fact that he had the right to insist that the case be presented to the Grand Jury.  The Court specifically advised Gunn that "you ***have*** a constitutional right to be charged by an indictment rather than an information."  (A.142; emphasis added).  Moreover, although the Court stated that Gunn had waived the right to be charged by an indictment and had consented to being charged by an information, the Court specifically asked "***do*** you waive this right knowingly and voluntarily?"  (A.143; emphasis added).  Viewing the colloquy concerning Gunn's waiver of indictment in context, Gunn's contention that the Court was simply telling Gunn that he had previously waived indictment (Gunn Mem. 3-4) is disingenuous.  Gunn could have raised an objection to proceeding by way of information, but did not do so.  It follows that Gunn's waiver of indictment was consistent with Rule 7(b) and Gunn was properly charged in an information.

In light of the clear evidence that Gunn's waiver of indictment was knowing and voluntary, and occurred in open court, there is no basis for concluding that appellate counsel was constitutionally ineffective in not raising this issue on appeal.  *See Forbes*, 574 F.3d at 106

(failure to include a meritless claim does not constitute ineffective assistance). Thus, Gunn has failed to establish "cause" for his failure to raise this argument on appeal and the claim is barred.

### 2.    Claim That The Court Lacked Jurisdiction Over Count Three

Gunn contends that his conviction on Count Three of the Information, which charged him with a violation of Title 18, United States Code, Section 924(c), should be vacated. First, Gunn claims that the statute criminalizes two separate and distinct offenses and therefore is duplicitous. (Gunn Mem. 11-16). Second, Gunn argues that there was not an adequate factual basis for his guilty plea to that count. (Gunn Mem. 16-22).

#### (a).    Section 924(c) Is Not Duplicitous

Count Three of the Indictment charged that:

> From in or about the Summer of 2001 through in or about Summer of 2002, in the Southern District of New York and elsewhere, RODERICK GUNN, a/k/a "Tyrone Coleman," the defendant, unlawfully, willfully, and knowingly, duing and in relation to a crime of violence for which he may be prosecuted in a court of the United States, to wit, the offenses charged in Counts One and two of this Information, did aid and abet the use, carrying, and brandishing of firearms, and in furtherance of such crime, did aid and abet of the possession of firearms.

(A. 129).

Relying primarily upon a case from the Sixth Circuit, *United States* v. *Combs*, 369 F.3d 925 (6th Cir. 2004), Gunn contends that the § 924(c) count was duplicitous. In *Combs*, the Sixth Circuit concluded that § 924(c) criminalizes two separate and distinct offenses: (1) use and carrying of a firearm during and in relation to a crime; and (2) possession of a firearm in furtherance of a crime. 369 F.3d at 931-33. Gunn contends that by copying the statutory language, Count Three charged Gunn with two separate and distinct offenses, "which the Government grouped together as one offense in a duplicitous manner." (Gunn Mem. 15).

-22-

The Second Circuit, however, has not yet decided whether Section 924(c) is duplicitous, and at least two other circuits – the Seventh and Ninth Circuits – have reached the conclusion that it is not.  *See*, *e.g.*, *United States* v. *Haynes*, 582 F.3d 686, 704 (7th Cir. 2009) ("[T]he three ways in which [the crime defined in] § 924(c) can be committed may be alleged in the conjunctive in one count . . . and proof of any one of them will support [a] conviction."); *United States* v. *Arreola*, 467 F.3d 1153, 1156-60 (9th Cir. 2006) (concluding, after extensive examination of the legislative history of Section 924(c), that "the legislative history does not support the conclusion that Congress intended to create two separate offenses in § 924(c)").

The *Arreola* court addressed the statutory language of § 924(c) and held that while the disjunctive language indicates that the statute prohibits separate acts, it does not create two separate offenses.  *See id*. at 1158.  The court pointed out that the absence of sub-sections delineating separate offenses and the fact that both the "possession" and "use and carry" clauses are in a single sentence confirms that Congress only intended to create one offense.  *Id*.  The court reviewed the legislative history of § 924(c) and found that it did not point conclusively in either direction, but tended to support the position that Congress only intended to create a single offense.  *See id*. at 1158–59.  The court also found that § 924(c) does not prescribe "distinctly different kinds of conduct" and the similarity of the evidence required to prove a violation of the first clause of § 924(c) and the second suggests that the statute proscribes only one offense.  *Id*. at 1159.  Finally, the court found that it would be inappropriate to apply multiple punishments to a defendant who violated both clauses of § 924(c) indicating it is unlikely that Congress intended for § 924(c) to encompass separate offenses.  *See id*. at 1160.  *Accord Reyes-Velázquez* v. *United States*, Civil No. 09-1626 (ADC), 2012 WL 4483679 (D.P.R. Mar. 5, 2012) (rejecting claim that

a § 2255 motion should be granted because count of the indictment accusing him of carrying and possessing a firearm during and in relation to a drug trafficking crime fails to charge an offense).

District courts in this circuit that have considered the question of whether Section 924(c) is duplicitous have held that it is not.  *See*, *e.g.*, *United States* v. *Barret*, No. 10-cr-809 (S-3) (KAM), 2011 WL 6780901, at *2 (E.D.N.Y. Nov. 27, 2011) (denying motion to dismiss 924(c) count on duplicity grounds because the charge is not duplicitous); *United States* v. *Jackson*, 749 F. Supp. 2d 19, 30 (N.D.N.Y. 2010) (denying motion to dismiss 924(c) charge on duplicity grounds); *Harris* v. *United States*, No. 09- CV- 4380 (ARR), 2010 WL 2710600, at * 2 (E.D.N.Y. July 6, 2010) (rejecting duplicity argument where the jury instructions left no doubt that the jury reached a unanimous verdict with respect top conduct that constitutes a codified federal offense under the statute).  Indeed, in *Jackson*, Judge Hurd specifically relied upon the Ninth Circuit's reasoning in *Arreola*, finding it to be persuasive.  749 F. Supp. 2d at 30.

In light of this weight of authority, this Court should conclude that Section 924(c) is not duplicitous and should reject Gunn's argument.  In any event, given that the authority on this issue weighs against a finding that the statute is duplicitous, it cannot be said that counsel's decision not to include this argument on appeal fell below an objective standard of reasonableness such that Gunn received constitutionally ineffective assistance.  *See Cuoco*, 208 F.3d at 32 (appellate counsel is not required to advance every conceivable nonfrivolous argument that could be made).

      **(b).**    **There Was An Adequate Basis For Gunn's Plea To Count Three**

Gunn argues that his conviction on Count Three should be vacated because there is no admission in the record that he "aided and abetted the use, carrying, possession and brandishing of firearms" and thus there was not a factual basis for his guilty plea.  (Gunn Mem.

17-22).  Although Mr. Palma litigated this issue in connection with Gunn's second motion to withdraw his guilty plea, he did not include raise it in connection with Gunn's appeal.

Gunn's argument that there was an inadequate factual basis for his plea to Count Three of the Information is meritless.  Fed. R. Cr. P. 11(f) "requires the court to assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty."  *United States* v. *DeJesus-Abad*, 263 F.3d 5, 9 (2d Cir. 2001) (*per curiam*) (internal quotation marks omitted).  The Second Circuit has held that there is "no specific dialogue that must take place in order to comply" with the rule and the "court may rely on defendant's own admissions, information from the government, or other information appropriate to the specific case."  *United States* v. *Andrades*, 169 F.3d 131, 136 (2d Cir.1999).  Indeed, "a reading of the indictment to the defendant coupled with his admission of the acts described in it [is] a sufficient factual basis for a guilty plea, as long as the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal."  *Id.* (internal quotation marks omitted) (alteration in original).

In this case, the Court specifically confirmed that Gunn had received a copy of the Information, had read it and had discussed it with his attorney.  (A. 140-41).  The Court went through the information, count by count, and told Gunn what each count charged, including Count Three.  (A. 141-42).  At the Court's direction, the Government explained the elements of each of the Counts.  With respect to Count Three, the Government stated:

> With regard to Count 3, which is the possession of a firearm in connection with the crime of violence, the government would have to prove that the defendant unlawfully, willfully and knowingly during and in relation to a crime of violence for which he may be prosecuted in a court of the United States – in this case the charges contained in Counts 1 and Count 2 of the information – did aid and abet the use, carrying and brandishing of firearms, and in furtherance of such crime did aid and abet the possession of firearms.

(A. 144-45).

Against this backdrop, Gunn admitted that he had committed the acts charged in the Information.  Gunn specifically stated that he had participated in a robbery conspiracy and that firearms were brandished during the robberies.  (A. 153-54).  Moreover, both the defense and the Government specifically represented to the Court that there was a sufficient factual basis for the plea.  (A. 153).  These statements, combined with Gunn's familiarity with the charges against him, form a sufficient factual basis for his plea under the government's aiding and abetting theory of liability.  *See United States* v. *Wilkerson*, 361 F.3d 717, 724 (2d Cir. 2004) (defendant's guilt as an aider and abettor must be established separately with respect to a firearms offense and not merely with respect to the underlying robbery); *United States* v. *Medina*, 32 F.3d 40, 45 (2d Cir. 1994) (to be liable under 924(c) as an aider and abetter, defendant must directly facilitate or encourage the use or carrying of a firearm, not merely facilitate or encourage the commission of a crime while knowing a firearm would be used).  For example, in *United States* v. *Pipola*, 83 F.3d 556, 565 (2d Cir. 1996), the Second Circuit held that an aiding and abetting violation of Section 924(c) was established where defendant "designed the plans for two robberies and these plans, including the use of firearms, were effectuated through the acts of his co-conspirators."  Here, Gunn was a tipster who helped set up robberies of drug dealers that involved the use of firearms.  Thus, under a division of labor theory, Gunn's role in setting up the robberies with the understanding that firearms would be brandished also aided and abetted the use of the firearms.[8]

---

[8]      Gunn can also be held liable for under a Pinkerton theory of liability for the substantive crime of using, carrying, and brandishing a firearm in violation of 18 U.S.C. § 924(c), even if he did not personally perform these actions. This theory holds a defendant guilty of a § 924(c) violation if: (1) the defendant conspired to commit a crime involving violence or drug trafficking; (2) the § 924(c) offense was committed in furtherance of the conspiracy; and (3)

In light of the evident lack of merit to the claim, it was not ineffective for Mr. Palma to omit it from Gunn's appeal.  Mr. Palma litigated this issue in connection with Gunn's second motion to withdraw his guilty plea, and saw that it had no traction.  Mr. Palma made the strategic decision to attack the voluntariness of the entire guilty plea on appeal based upon the argument that counsel had not sufficiently advised Gunn concerning the plea, which counsel supported by reference to evidence that prior counsel had not visited Gunn in prison prior to the plea.  (App. Br. 26-28).  The selection of which argument to advance in challenging the guilty plea is precisely the type of strategic decision made after considering all of the options that the Supreme Court has characterized as "virtually unchallengeable."  *Strickland*, 466 U.S. at 690.  Nor is there any reason to think that the result of the appeal would have been different had counsel pursued the aiding and abetting issue on appeal.  It follows that Gunn is barred from raising the claim on this Motion.

### 3.    Claim That There Was No Factual Basis For Gunn's Guilty Plea To Counts Four and Five Of The Information

Gunn argues that his plea to Counts Five and Six of the Information lacked a factual basis and should be vacated.  Those counts charged Gunn with possession of a firearm while being an alien illegally and unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5), on two separate occasions.  (A. 131-32).  Gunn claims that he had an approved I-130 application at the time he possessed the firearms and he was therefore in the United States

---

the [§ 924(c) ] offense was a reasonably foreseeable consequence of an act furthering the unlawful agreement.  *Rosario* v. *United States*, 164 F.3d 729, 734 (2d Cir.1998) (citing, *inter alia*, *United States* v. *Masotto*, 73 F.3d 1233, 1241 (2d Cir.1996)).  There is no question that Gunn's allocution, by itself, establishes that he was a participant in the robbery conspiracy, that guns were brandished by others in the course of the robberies, and that Gunn knew that the firearms would be used in the commission of the robberies.  Thus, there was a factual basis for Gunn's plea under the theory set forth in *Massotto*.

legally.  (Gunn Dec. ¶ 13).  Thus, Gunn contends, his plea to Counts Five and Six is invalid because he was not in the United States illegally at the time he possessed the firearms.  (Gunn Mem. 23-25).  This meritless claim has already been rejected by this Court, and it was not unreasonable for counsel to omit the claim from Gunn's appeal.

Gunn's counsel raised the claim that his supposed I-130 petition rendered his presence in the United States lawful in connection with his first motion to withdraw his guilty plea.  This Court found the argument to be without merit:

> [T]he Government has submitted persuasive evidence that [Gunn] was indeed "removed" from the United States on April 16, 1999 after an administrative hearing and prohibited from entering for five years. (Notice and Order of Expedited Removal dated April 16, 1999 (Ex. F [to the Government's Response To The Motion]).)  Thus, as a factual matter, the affirmative defense was likely unavailable.  It is also questionable whether the filing – or even approval – of an 1-130 visa application *ipso facto* renders an individual's presence in the United States legal.  *See Der-Rone Chour* v. *INS*, 578 F.2d 464, 468 (2d Cir.1978) ("The ... approval of [an alien's] I-130 petition ... [does not] permit him to remain in the United States.");  *Perales* v. *Casillas*, 903 F.2d 1043, 1048 (5th Cir. 1990) ("[N]othing in the Immigration and Nationality Act immunizes a deportable alien from deportation when [an I-130 visa petition] filed on his behalf is approved.");  *United States* v. *Atandi*, 376 F.3d 1186, 1192 (10th Cir. 2004) ("Because an I-130 visa petition does not authorize an alien to stay in the United States, an alien may be subject to 18 U.S.C. § 922(g)(5)(A)'s firearm restriction regardless of whether an I-130 petition on his or her behalf has been filed or approved.");  *but see Yesil* v. *Reno*, 958 F. Supp. 828, 843 (S.D.N.Y.1997) (relying on subsequently abrogated authorities in holding that a foreign student could lawfully remain in the United States pending resolution of his application for an adjustment of his immigration status).

(May 30, 2007 Order at 7-8).  Given the lack of merit to Gunn's claim, it was not unreasonable for counsel to forego raising this claim on appeal.  It follows that Gunn is barred from rasing it on this motion.

### C.    Ineffective Assistance Of Counsel Claims

#### 1.    Failure To Raise Arguments On Appeal

In addition to the claims that appellate counsel was ineffective for failing to raise the claims discussed above, Gunn argues that his appellate counsel (Mr. Palma) was ineffective because he failed to argue on appeal that this Court made certain erroneous rulings at sentencing. First, Gunn contends that counsel should have appealed the Court's denial of a Guidelines departure based upon Gunn's alleged minor role in the offense.  (Gunn Mem. 27-28).  Second, Gunn contends that counsel should have appealed the Court's denial of a reduced sentence based upon the conditions of Gunn's pre-sentence confinement in the Metropolitan Correctional Center ("MCC").  (Gunn Mem. 28-29).  Gunn has not demonstrated that either of these decisions constituted ineffective assistance of appellate counsel.

At sentencing, Gunn's counsel, Mr. Palma, argued that, in considering the sentencing factors set forth in Title 18, United States Code, Section 3553(a), the Court should give credit to Gunn for the Government's use of his information before Gunn's breach of his cooperation agreement was discovered, citing the Second Circuit's decision in *United States* v. *Fernandez*, 443 F.3d 19, 32 (2d Cir. 2006).  Counsel vigorously argued, in written submissions and at the sentencing, that the Court should impose a reduced sentence upon Gunn because his information had resulted in numerous arrests of other violent offenders.  This was a substantial issue, and the Court rightly gave "very serious consideration to this rather unique situation of a defendant undertaking cooperation, then breaking it off and putting himself, ultimately, in the position where the government, in the exercise of its discretion, declines to rehabilitate him."  (A. 272).  In fact, the Court adjourned the sentencing proceeding for one week to reflect on the issues raised by this argument.  (A. 248).  Ultimately, although the Court gave the argument

-29-

considerable thought, the Court was persuaded that Gunn's deception outweighed the helpful information that he provided to the government and declined to reduce Gunn's sentence based upon his attempted cooperation.  (A. 272).

In connection with his sentence, Gunn submitted a *pro se* brief in which he argued that he was entitled to a minor role adjustment under Section 3B1.2 of the Guidelines and that his sentence should be reduced based upon the conditions of his pre-sentence confinement.  Neither of these arguments had any merit, and they were not accepted by the Court at sentencing.  (A. 274-75).

With respect to the role adjustment, Gunn failed to meet his burden of proving by a preponderance of the evidence that he was entitled to a mitigating role adjustment under Section 3B1.2 of the Guidelines because his role as a tipster in the robbery conspiracy was important to the success of the illegal venture.  *See, e.g.*, *United States* v. *Imtiaz*, 81 F.3d 262, 265 (2d Cir. 1996) (*per curiam*) (affirming denial of mitigating role adjustment to broker/courier in single, two-kilogram heroin transaction); *United States* v. *Garcia*, 920 F.2d 153, 154-55 (2d Cir. 1990) (upholding denial of minor role adjustment to courier who received $150 for single delivery of one kilogram of cocaine; recognizing that couriers "are indispensable to the smuggling and delivery of drugs and their proceeds").  The Court found that, in light of  Gunn's admission that he tipped-off perpetrators to their robbery victims, received cash in exchange for his tips, and acted as a look-out during robberies, Gunn had failed to establish that he was a minor or minimal participant in the crimes.  (A. 274-75).

With respect to the complaint about the conditions of his confinement, Gunn's argument relied upon a Second Circuit case where the defendant's conditions of confinement were vastly different than the conditions Gunn experienced at the MCC.  *See United States* v.

-30-

*Carty*, 264 F.3d 191, 193 (2d Cir. 2001) (defendant was allegedly held in a four-foot by eight-foot cell with three or four other inmates without light or running water; received ten to fifteen minutes per day outside of his cell to bathe; was allowed to make only one phone call per week; had only a hole in the ground for a toilet; was denied access to paper, pens, newspaper, and radio; and lost 40 pounds while he was incarcerated).  Given the obvious dissimilarities between Gunn's circumstances and the *Carty* case, the Court rejected this argument.  (A. 274).

On appeal, Mr. Palma focused on the *Fernandez* claim in his challenge to Gunn's sentence.  (App. Br. 29-34).  Given the circumstance that this Court had found the issue worth serious consideration, counsel's decision to focus on the *Fernandez* claim was a valid exercise of counsel's strategic discretion.  Gunn argues that Mr. Palma's decision to forego arguing that the district court erred in not granting a Guidelines role adjustment and in not reducing Gunn's sentence based on Gunn's conditions of of confinement rendered his performance on appeal constitutionally ineffective.  This argument is wrong.  Part of an appellate advocate's duty is to separate out the stronger arguments from the weaker arguments, and focus on the stronger arguments.  Indeed, it is well understood that an appeal brief that adopts an "include everything including the kitchen sink" approach can significantly dilute the force of meritorious arguments and ultimately be unpersuasive.  Here, the two arguments that Gunn claims should have been raised on appeal were extremely weak, and had been correctly rejected by this Court.  On these facts, Gunn cannot establish "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533.  Indeed, the opposite is true.  Counsel correctly focused on the more significant issue, and omitted the weaker issues.  Moreover, in any event, given the fact that Gunn's arguments lacked merit, Gunn cannot

establish that "there was a reasonable probability that the [omitted claim] would have been successful." *Id.*

### 2. Failure To Raise Claim That The Government Breached The Terms Of Gunn's Proffer Agreements

In his memorandum, Gunn contends that the Government's filing of an Information charging Gunn with crimes additional to the crime with which he was originally charged constituted a breach of the proffer agreement that he executed in connection with his 2003 proffers, and that his attorneys were ineffective in failing to raise this claim during the litigation. (Gunn Mem. 32-38). This argument deserves short shrift. Gunn's proffers were conducted so that Gunn could enter into a cooperation agreement, and Gunn was advised that he would be required to plead guilty to the criminal conduct that he disclosed if he wanted a cooperation agreement. Accordingly, as demonstrated above, Gunn knowingly and voluntarily consented to the filing of the Information and then pled guilty to all six counts in order to attempt to secure the benefits of cooperation. As counsel explained at Gunn's plea hearing, at the time of Gunn's plea, the decision was a "wise and strategic decision" by Gunn to "provide the greatest likelihood for a shorter sentence [than] would be imposed if he were to proceed to trial." (A. 153). In light of his strategic decision to waive indictment and plead guilty, Gunn's claim that counsel was ineffective in failing to claim that the Government breached the terms of his proffer agreements is untenable.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Gunn's Section 2255 Motion be denied and the case dismissed.

In addition, the Government requests that the Court include in its Order a finding that Gunn has not made a substantial showing of a denial of a federal right, and that appellate review is therefore not warranted.  *Tankleff* v. *Senkowski*, 135 F.3d 232, 241 (2d Cir. 1998).  The Government further requests that the Court find, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal taken from the Order would not be in good faith.  *Coppedge* v. *United States*, 369 U.S. 438, 445 (1962).

Dated:  New York, New York
       April 5, 2013

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York,
Attorney for the United States
    of America

By: _____
    JOHN J. O'DONNELL
    Assistant United States Attorney
    (212) 637-2490

-33-

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA            :

        v.                 :

RODERICK GUNN,                      :
  a/k/a "Tyrone Coleman,"

                   Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - X

03 CRIM. 1277

03 Cr. ___ (WHP)

       The above-named defendant, who is accused of violating Title 18, United States Code, Sections 1951, 924(c)(1)(A)(ii), and 922(g)(5); and Title 21, United States Code, Section 846, being advised of the nature of the charge and of his rights, hereby waives, in open Court, prosecution by indictment and consents that the proceeding may be by information instead of by indictment.

                                  _____
                                   Defendant

                                  _____
                                   Witness

                                  _____
                                   Counsel for Defendant

Date:  New York, New York
       October 23, 2003

0202

# EXHIBIT B

## O'Donnell, John (USANYS)

| | |
|---|---|
| **From:** | USANYS-COURT PRODUCTION |
| **Sent:** | Tuesday, April 02, 2013 11:50 AM |
| **To:** | O'Donnell, John (USANYS) |
| **Subject:** | RE: Roderick Gunn, 55254-054 |

Yes, he was. 12:00 Judge Pauley motion hearing.

_____

**From:** O'Donnell, John (USANYS)
**Sent:** Tuesday, April 02, 2013 11:43 AM
**To:** USANYS-COURT PRODUCTION
**Subject:** Roderick Gunn, 55254-054

Hello-

I am responding to a post-conviction 2255 petition filed by this inmate and I am trying to verify his attendance at a court proceeding on October 23, 2003.  Is there any way you could check your records and let me know if he was produced for court on that date?

Thanks.

John


John J. O'Donnell
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
Tel:  212-637-2490
Fax: 212-637-0083

## AFFIRMATION OF SERVICE

I, John J. O'Donnell, affirm under penalty of perjury as follows:

1.      I am an Assistant United States Attorney in the Southern District of New York.

2.      On April 5, 2013, I caused a copy of the foregoing to be served on the petitioner by First-Class Mail at the following address:

> Roderick Gunn
> Reg. No. 55254-054
> USP Atwater
> PO Box 019001
> Atwater, CA 95301

Dated: New York, New York
  April 5, 2013

John J. O'Donnell
Assistant United States Attorney
(212) 637-2490