IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

_____X

RODERICK GUNN                          12 Civ. 6632 (WHP)

        PETITIONER               03 Cr. 1277 (WHP)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 4/29/13

        v.

UNITED STATES OF AMERICA

        RESPONDENT

_____X

REPLY BRIEF FOR RODERICK GUNN

PURSUANT TO 28 U.S.C. §2255

_____


Roderick Gunn

Petitioner (Pro Se)

Reg. No. 55254-054

United States Penitentiary

P.O. Box 019001

Atwater, CA 95301

ARGUMENT

I.

THE COURT LACKED SUBJECT-MATTER JURISDICTION
ABSENCE A VALID WAIVER OF GRAND JURY INDICTMENT

A. Waiver of Indictment Under Rule 7(b).

The government's assertion that Mr. Gunn's signature on a
waiver consent form witnessed by the Deputy Clerk is
sufficient evidence that he knowingly waived his rights to a
Grand Jury Indictment is absurd. That ideology must rejected
by the Court because the docket records expressly proves the
contrary. See Exhibit A (Docket Sheet, entry #11). The docket
entry stated: ("Preliminary Examination cancelled").
References to a U.S.Marshall Service document and the consent
waiver form cannot cure the Rule 7(b) error. Likeiwse, being
presented for court appearance by the U.S. Marshall is not
evidence that the hearing was conducted. Rather, such only
revealed that Mr. Gunn was transported from the M.C.C. to the
Marshall's holding cell. The docket records sufficiently
proves that this protective formality proceeding was never
conducted by the court. Thus the court acted without subject-
matter jurisdiction in accepting the plea and imposing the
sentence.

In United States v. Cordoba-Murgas, 422 F.3d 65, the Second
Circuit had rejected this type of waiver claim the government
proposed, stating: "[T]he government's indictment-waiver claim

1

was effectively refuted thirty years ago, when in an opinion by the late Judge Murray L. Gurfein, we stated:

> "[W]hile prosecution by indictment can be waived, Fed. R.Crim.P. 7(b), the only waiver that could conceivably be found here is the plea of guilty. It would be tempting to to hold that since a defendant may waive indictment, a plea of guilty is at least its equivalent...Yet the waiver of indictment has been clothed in formal procedure. It [must] be made in open court and the defendant must be told the nature of the charge and informed of his rights before he is allowed to consent to the waiver. We cannot erode the protective formality of the rule because of a hard case. (citing Macklin, 523 F. 2d 193, 196 (2d Cir 1975)).

The Cordoba-Murgas Court had strongly advised against eroding the protective formality of Rule 7(b), because of a hard case. The law is clear-- the waiver "must" be made in open court before the defendant consents. Strict adherence to Rule 7(b) and Second Circuit authority must be followed. A guilty plea or a guilty plea setting cannot beused as a substitute for this clothed formality procedure. Cordoba-Murgas, 422 F.3d 65. Therefore, in the absence of a Rule 7(b) proceeding on or about October 23, 2003 when the Information was filed, the court acted without subject-matter jurisdiction.

B. Subject-matter Jurisdiction Claim Requires

Sua Sponte Consideration.

This court exceeds its jurisdiction in the absence of a grand

jury indictment or a valid waiver of grand jury indictment.

United States v. Wedermeyer, 51 F.3d 319, 324 (2d Cir 1995).

The Supreme Court announced "that for a court to pronounce

upon the meaning or the constitutionality of a state or

federal law when it has no jurisdiction to do so is, by very

definition, for a court to act ultra vires." Steel Co. v.

Citizens for a Better Envr., 523 U.S. 83. When jurisdiction

ceases to exists, the only function remaining is that of

announcing the fact and dismissing the cause. Objections to

subject matter jurisdiction may be raised at anytime and the

courts are obligated to consider sua sponte issues that

parties have disclaimed or have not presented. U.S. v. Cotton,

535 US 625,630 (2002). "Subject matter jurisdiction cannot be

waived or forfeited. Indeed, a party may raise such an

objection even if the party had previously acknowledged the

trial court's jurisdiction." Kontrick v. Ryan, 540 U.S. 443,

455. This court is obligated to consider sua sponte the lack

of subject-matter jurisdiction claim, which warrants the

dismissal of the case in its entirety.


II.

SPEEDY TRIAL VIOLATION PURSUANT TO §3161(b).

Section 3161(b) provides that, "[a]ny information or

indictment charging an individual with the commission of an

3

offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." Here, Mr. Gunn was arrested on June 25, 2003 and brought before a Magistrate where he was represented by Court appointed counsel, Roland Thau for bail purposes. Shortly after, Gunn's attorney on his state case, Ms Susan Gans filed a Notice of Appearance, entered 7/02/2003. It is uncertain why the court appointed Jeremy F. Orden 07/18/03 after Ms Gans was acknowledged as Mr. Gunn's counsel. The docket record revealed that time was excluded from 7/25/2003 to 8/25/2003, and according to the government, AUSA Jason Sabot was given consent by Roger Adler, whom Gunn retained shortly after the appointment of Jeremy Orden. It is important that this court take judicial notice, that Mr. Adler was never acknowledged as counsel on the record until October 23, 2003, when a "Notice for Appearance" was filed on Gunn's behalf. See Docket #12. Therefore, Mr. Adler had no authority as [counsel on the record] to consent to waiver requests. The records revealed that Adler consented to numerous waivers without judicial authority and thus, these consents were invalid. However, should the court credit Adler's waiver consents, Section 3161(h)(8)(A) clearly provides in pertinent part that:

    "No such period of delay resulting from a continuance
    granted by the court in accordance with this paragraph
    (3161(h)(8)(A)), shall be excludable under this
    subsection unless the court sets forth, in the record
    of the case, either orally or written, its reasons

**4**

for finding that the ends-of-justice served by the

granting of such continuance...."

The Second Circuit held in United States v. Oberoi, 547 F.3d 436 (2d Cir 2008), that the purpose of the Speedy Trial Act cut against exclusion on the grounds of mere consent waiver, (citing Zedner, 547 U.S. at 500). The Supreme Court described the requirement that the district court make such findings as categorical and held, "[i]f a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted." Zedner v. United States, 547 U.S. 489, 508 (2006). A mere consent or waiver does not automatically nullifies the rights proscribes under 3161(b). In Zedner, the Court acknowledged that: (i) the district court had never made express findings on the record about the ends-of-justice balance; and (ii) the Act, at the very least, implied that such findings had to be put on the record by the district court at the time such findings were made. Here, the court must address whether consents to waivers granted to the government by an attorney who was not counsel on the record, were valid waivers and whether the record revealed that the Magistrate courts had made express findings regarding the need for an ends-of-justice continuances.

### III.

### COURT LACKED JURISDICTION OVER COUNT THREE

A. Section 924(c) Is Not Construed As A Codified

**5**

Federal Offense

It is well established law in Bailey v. United States, 516
U.S. 137 (1998) that "use" of a firearm, and "possession" of a
firearm are two distinct crimes proscribed by the 924(c). Id
at 143. The Court in Watson v. United States, criticized as
"peculiar" and "under-whelming" the argument of the government
that bartering drugs to obtain a gun could be punished both as
prohibited "use" and "possession" of a firearm. 552 U.S. at
83, 128 S.Ct at 585-86. The Supreme Court set forth a peculiar
rule in Blockburger v. United States, 284 U.S. 299, 76 L. Ed
306, that to determine whether two offenses are the same or
separate, requires review whether each provision requires
proof of an additional fact [or element] which the other does
not. Therefore, if "use" of a firearm in the 924(c) setting,
requires an additional fact that "possession" of a firearm
under the same statute does not, then they are separate
offenses under the Blockburger rule. The Fourth and Sixth
Circuits agreed that §924(c) is not   construed as codified
federal offense, because it charges two distinct and separate
offenses as one single crime, depriving the court subject-
matter jurisdiction over such offense. See, Pleasant, 125
F.Supp. 2d 173, 178 (E.D. Va 2000); and Combs, 396 F.3d 925
(6th Cir 2004)("because Combs' indictment on Count III
[924(c)] cannot be reasonably construed to have charged him
with a crime under federal law, we reverse his conviction and
remand to the district court to dismiss the 924(c) count for
failure to charge an offense"). Therefore, this claim has
merits to be adjudicated by the court.

**6**

B. GUILTY PLEA DOES NOT SUPPORT CONVICTION
   FOR COUNT III

At the Rule 11 hearing, the court inquired of Mr. Gunn: "Do
you understand sir, that Count 3 charges you with using,
carrying and possession a firearm during and in relation to a
crime of violence...?" (Tr. at 9). This inquiry rested solely
on principal liability, an offense Mr. Gunn was never charged
for, and a violation of the Rule 11 proceeding. The Supreme
Court held in McCarthy v. United States, that the court must
ensure that the conduct the defendant admits constitutes the
offense charged in the indictment. See also, United States v.
DeJesus-Abad, 263 F.3d 9 (2d Cir 2000) ("noting that court must
assure itself that conduct admitted by defendant is 'an
offense under the statutory provision for which he is pleading
guilty'"). This strict compliance was never followed at the
Rule 11 proceeding for count three. The Court, on two separate
occasions notified Mr. Gunn that he was pleading guilty to "us
ing and possession of firearm during and in relation to a
crime of violence," (Tr. at 23), an offense he was never
charged with, and not once did the court inquired of Gunn
about "aiding and abetting" the use and possession of a
firearm, or brandishing of firearm. It's well established law
that a plea of guilty [must] be knowing and intelligently
entered. Here, Mr. Gunn did not understand the legal
difference between criminal responsibility as a principal and
vicarious liability as an aider and abettor, a fact the record
strongly supports. A defendant cannot be convicted for a crime

he never pleaded guilty to and thus, the plea for count 3 is
constitutionally void.

    C. The Elements For "aiding and Abetting"
       Are Not Supported By The Plea.

The law of this Circuit counsels against the conviction for
count 3. See United States v. Medina, 32 F. 3d 40 (2d Cir
1995). In Medina, the Second Circuit held that a defendant
charged as an aider and abettor of a §924(c) crime cannot be
convicted of this charge "merely because he knew that a
firearm would be used or carried and, with that knowledge,
performed an act to facilitate or encourage the robbery
itself. Rather, the language of the statute requires proof
that he performed some act that directly facilitated or
encouraged the use or carrying of a firearm." Id at 45.
Accordingly, Count 3 of the guilty plea is in violation of
Rule 11(b)(3) of Fed.R.Crim.P. In light of Medina, the record
is insufficient to support a factual finding for the
conviction of Count 3. The Court's inquiry of Gunn (Tr.pp 8-9,
23); and Gunn's statement that firearms were brandished during
these robberies (Tr. pp 22) do not--separately or together--
support a factual finding that he "performed some act that
directly facilitated or encouraged the use or carrying of a
firearm." See Giraldo, 80 F. 3d at 676 ("Proof simply that
defendant knew that a firearm would be carried, even
accompanied by proof that he performed some act to facilitate
or encourage the underlying crime in connection with which the
firearm was carried, is insufficient"). See, e.g., Braxton v.

8

United States, 500 U.S. 344. At Braxton's plea allocution, the prosecutor stated that should Braxton proceed to trial, he would prove that Braxton shot at the U.S. Marshall twice. Braxton admitted that what the prosecutor said he would prove happened [happened]. The court sentenced Braxton to attempted murder though he never pleaded guilty for that specific crime. The Supreme Court reversed, stating that Braxton's generalized stipulation wasn't "fact specific" that he shoot at the Marshal with intent to kill. Here, Gunn's stipulation concerning the 924(c) offense does not establish the fact specific elements for aiding and abetting within the meaning of 18 U.S.C. 2. The absence of this fact deprives the court jurisdiction to impose the sentence for count 3. The prosecutor cannot make an end run around the jurisdictional prerequisite of an indictment, [information] by charging any federal offense, and then proceeding to prosecute a defendant for a different, albeit related federal offense. Gunn was charged for "aiding and abetting" but prosecuted for principal liability of §924(c). The court acted without jurisdiction when it accepted the plea and imposed the sentence for a crime the defendant was never charged for.

## IV.

GUILTY PLEA DOES NOT SUPPORT CONVICTION FOR
§922(g)(5) FOR COUNT FIVE AND SIX

In short, Mr. Gunn had stipulated to "illegal possession of firearms" while the information charges "illegal alien in possession of firearm," §922(g)(5). This scenario is no

**9**

different from that in McCarthy v. United States, 394 U.S. 459 (1969) in which the Supreme Court overturned the conviction, even though McCarthy answered in the affirmative, the Rule 11 inquires concerning his rights, his understanding of the charges, and the consequences. The Court concluded that "if a defendant's guilty plea is not 'equally' voluntarily and knowing, it had been obtained in violation of due process and is therefore void," and that judges ["must"] determine that the conduct which the defendant admits, constitutes the offense charged in the indictment.

The court informed Gunn that he is pleading guilty to "illegal possession" of firearm, (Tr. at pg 10) to which Gunn pleaded. However, "illegal possession" of firearm is a distinct offense from "illegal alien in possession of firearm," and illegal possession of a firearm is not a codified federal offense under any subsection of 18 U.S.C 922. This court failed to assure itself that the conduct to which Gunn admits in count Five and Six, constitutes the offense charged in the information. The plea was not equally knowing and voluntarily entered and is therefore void. The government's argument that Gunn claimed that he had an approved I-130 application at the time he possessed the firearms does not address the knowing character or voluntariness of the plea, nor the specific conduct Gunn pleaded guilty to. United States v. Maher, 108 F.3d at 1524 ("the offense for which a defendant admits, must constitute the offense for which he has been charged"). To sustain the 922(g)(5) conviction, the records must establish that Mr. Gunn stipulated to the essential elements of the

10

offense, "illegal alien"-- in "possession of firearm," a fact
the record is devoid of. Even if Gunn's I-130 claim has no
merits, this does not change the Sixth Amendment requirement
that each element of the 922(g)(5) offense must be proved by a
jury or admitted by the defendant. See United States v.
Gonzalez, 420 F.3d 111 (2d Cir 2005), in which the Court held
that "because the defendant's allocution failed to provide an
adequate factual basis on the element of the drug quantity,
his guilty plea could not support a judgement of conviction on
a §841(b)(1)(A) charge. Stare decisis demands that this court
apply the law pronounced in Gonzalez, 420 F.3d at 111; Yu, 285
F.3d at 197-98; and Adams 448 F.3d 492, which cases the Second
Circuit uniformly held that in the absence of the defendant's
stipulation to an element of the offense, the court erred in
entering a judgment against them. The record is void of a
stipulation to the "illegal alien" element and dismissal of
count five and six is warranted.

## V.

### INEFFECTIVE ASSISTANCE OF COUNSEL

The government argues that Mr. Gunn is procedurally barred
from raising issues he failed to raise on appeal, citing
United States v. Frady, 456 U.S. 152, 164 (1982). However, the
Supreme Court provides a standard which a Movant can raise
issues he or she failed to raise on appeal, stating that the
Movant shows either, (1) "cause" for failing to bring a direct
appeal and "prejudice" arising from the failure; or (2) that
he or she is "actually innocent" of the offense of conviction.

Bousley, 523 U.S. at 622. Ineffective assistance in failing to properly preserve the claim for review may constitute "cause." Edwards v. Carpenter, 529 U.S. 446 (2000). Cause may be demonstrated with a showing that the failure to appeal was the result of ineffective assistance of counsel. Murray v. Carrier, 477 U.S. at 488. To demonstrate prejudice in the context of appellate counsel's ineffective assistance, petitioner must show that "there was reasonable probability that his claim would have been successful on appeal." Mayo v. Henderson, 13 ·F.3d at 534 (2d Cir 1994).

Here, counsel had preserved meritorious claims in his Motion To Withdraw the Plea for Count 3, on the character of the plea; and the "aiding and abetting" claim. The government claimed that the Fernandez argument raised by counsel was the strongest claim available, but this assertion is incorrect. The records revealed that the strongest claim available to raised was the 924(c) claims--an offense that proscribes a harsher term of imprisonment than the other counts combined, for which the court informed Gunn that he was pleading guilty to principal liability of §924(c), when he was only charged for "aiding and abetting." See United States v. Scotti, 47 F. 3d 1237 (2d Cir 1995)("instructions given on principal liability was erroneous, and it is impossible to tell what theory the jury depended on). See Exhibit B (Rule 11 Motion, Conclusion page). Had counsel presented the 924(c) claims in the appellate brief, the possibility of getting relief from the Second Circuit was greater than that for the Fernandez claim. The facts herein establishes that counsel's representation

fell below an objective standard of reasonableness, and in effect, prejudiced Gunn--satisfying the "cause" and "prejudice" prongs excusing the procedural default resulted from counsel's failure to challenge issues preserved in the district court on direct appeal. See e.g. Murray v. Carrier, 477 U.S. 478, 488 (1996)(counsel's error that rise to constitutional ineffectiveness under Strickland standard constitute cause for procedural default). See i.e. Exhibit C (Point I, p.19 & p.22 of Appellate Brief). Counsel presented a frivolous argument that the government omitted the interstate nexus element from its explanation of the elements of the marijuana distribution conspiracy charged in count four. This argument has no legal support from the law or the applicable statutes, §846, §841(a)(1) concerning interstate commerce. See Exhibit D (Second Cir. Opinion in U.S. v. Gunn 419 Fed Appx 106), in which the Court rejected counsel's interstate nexus theory concerning the marijuana conspiracy. In Mayo v. Henderson, this Circuit held that "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker" is proof of appellate counsel ineffectiveness. 13 F.3d at 533. Counsel's omission prejudiced Mr. Gunn on the grounds that had counsel raised the 924(c) claim, there's a great possibility that the would have Court granted the relief, which would have significantly reduced the sentence seven years. Counsel failed to challenge the court's lack of subject-matter jurisdiction in the clear absence of a grand jury indictment and a valid waiver of grand jury indictment pursuant to Rule 7(b). The Second Circuit held in United States v. Tran, that a jurisdictional defect cannot be

13

cured by the absence of prejudice to the defendant. 200 WL
1701651, *8 (2d Cir). Therefore, in the absence of subject-
matter jurisdiction, prejudice need not be proven.
Nevertheless, prejudice is clearly proven by the facts and
evidence presented herein.

## VI.

BREACH OF PROFFER AGREEMENT MUST BE CONSTRUED
AGAINST THE GOVERNMENT AND REMEDIED BY COURT

The government asserted Gunn's proffers were conducted so that
he could enter into a cooperation agreement with the
government while not denying the claim of the breach. Gunn's
breach of the plea agreement was construed against him, and
the law should be fairly applied to the government as well
when the evidence proved they committed such breach.
Agreements in general operates under the principles borrowed
from the law of contract. United States v. Alexander, 896 F.2d
91,95 (2d Cir 1989); Santobello v. New York, 404 U.S. 257,
262-63 (1971)(specific performance is appropriate remedy for
breach of plea agreement).

Here, the proffer agreement explicitly stated in pertinent
part: "In any prosecution brought against Client by this
Office, except as provided below the Government will not offer
in evidence on its 'case-in-chief', or in connection with any
sentence proceeding for the purpose of determining an
appropriate sentence, any statements made by Client at the
meeting..." ¶2. See Exhibit E (Proffer Agreement). The only

exception to the use of statements obtained at the meetings,
see ¶3, is in any event Mr. Gunn decided to go to trial and
presented evidence contrary to what was proffered, or at a
sentencing proceeding. The Government breached the proffer
agreement when it used independent statements obtained from
Gunn to bring the charges against him, irrespective of whether
Gunn was seeking to cooperate or not. The Proffer agreement
operates under contract law principles, thus the government
was bound by it's terms. It would be a miscarriage of justice
to uphold the breach of the plea agreement against Gunn, but
disregard the government's breach of the proffer agreement.
This breach presents yet another fair and just reason to
dismiss the information in its entirety, because it is Gunn's
independent statements that had became the charges on 03 Cr.
1277. This fact was confirmed by former AUSA Jason Sabot at
Gunn's Suppression Hearing, and by Agent Jason Zamaloff at
Gunn's trial (SI 06 Cr 911). This court must remedy this
breach, which remedy is dismissal.


                        Conclusion.

Mr. Gunn had requested in his prior submissions [§2255 Motion]
that this court seal this entire proceeding, including all
defense submission; government responses, and the court's
Order. This request is made solely for the safety of Mr. Gunn
due to the potential threats this published information can
create against Gunn in the violent atmosphere he's presently
serving his sentence, which had occurred in the past, after
inmates viewed published opinions on the Lexis site at the
prisons. Mr. Gunn also requests of this court to seal all

                          15

other prior proceedings before this court concerning 03 Cr. 1277 (WHP), including the Court's opinion on Gunn's Motion To Withdraw his guilty plea; Gunn's Sentencing proceeding on 03 Cr 1277; and any other entries related to 03 Cr. 1277. The government had not objected to this sealing request, and thus, Mr. Gunn requests that the court grants this relief.

WHEREFORE, Mr. Gunn submits that the court acted without subject-matter jurisdiction in accepting the plea and imposing the sentence, and is required to consider sua sponte the lack of "subject-matter jurisdiction" claims that warrants dismissal of the case in its entirety, or any other relief this court deems just and fair.

Respectfully submitted

Dated: April 24, 2013

Roderick Gunn

# EXHIBIT A

SDNY CM/ECF Version 4.0.3                                                    Page 5 of 11

| 10/23/2003 | 12 | NOTICE of Appearance for Roderick Gunn by Attorney Roger Bennet Adler (jw) (Entered: 10/27/2003) |
|---|---|---|
| 10/23/2003 | | CJA 20 APPOINTMENT OF AND AUTHORITY TO PAY COURT APPOINTED COUNSEL as to Roderick Gunn : Appointment of Attorney Roger Bennet Adler . ( Signed by Judge William H. Pauley III ) (moc) (Entered: 11/18/2003) |
| 11/03/2003 | 13 | ORDER as to Roderick Gunn, substituting attorney terminated attorney Susan L. Gans for Roderick Gunn Added Roger B Adler ( Signed by Judge William H. Pauley III ); (jw) (Entered: 11/03/2003) |
| 11/17/2003 | 14 | ORDER as to Roderick Gunn, set pretrial conference for 2:00 12/2/03 for Roderick Gunn , and to Continue in Interests of Justice time is excluded from 11/14/03 to 12/2/03 ( Signed by Judge William H. Pauley III ); (ph) (Entered: 11/18/2003) |
| 12/03/2003 | 15 | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Roderick Gunn. Time excluded from 12/2/03 until 12/12/03 as to Roderick Gunn. Parties are directed to appear for a PTC on 12/12/03 at 4:00 p.m. Pretrial Conference set for 12/12/2003 04:00 PM before Judge William H. Pauley. SO ORDERED. (Signed by Judge William H. Pauley on 12/3/03)(ja, ) (Entered: 12/08/2003) |
| 12/16/2003 | 16 | ORDER as to Roderick Gunn., ORDER EXCLUDING TIME UNDER THE SPEEDY TRIAL ACT as to Roderick Gunn. Time excluded from 12/12/03 until 12/19/03., as to Roderick Gunn; Pretrial Conference set for 12/19/2003 03:30 PM before Judge William H. Pauley. (Signed by Judge William H. Pauley on 12/12/03)(jw, ) (Entered: 12/17/2003) |
| 04/05/2004 | 19 | NOTICE OF ATTORNEY APPEARANCE: Christopher Booth appearing for Roderick Gunn. (ph, ) (Entered: 04/06/2004) |
| 06/16/2004 | 20 | ORDER as to Roderick Gunn. The Court received the attached ex parte communication from defendant's wife Mrs. Janet Gunn and now forwards it to counsel. (Signed by Judge William H. Pauley III on 5/27/04)(ph, ) (Entered: 06/18/2004) |
| 10/14/2004 | 22 | ORDER as to Roderick Gunn. The Crt rec'd the attached ex parte communication from Andrea Grasiewicz for dft Roderick Gunn and now forwards it to counsel. SO ORDERED. (Signed by Judge William H. Pauley III on 10/12/04)(ja, ) (Entered: 10/20/2004) |
| 08/31/2005 | 24 | ORDER as to Roderick Gunn. It is hereby ORDERED, that Christopher Booth, or a representative from his office, be permitted to review, inspect, and copy, the entire court file in the matter of U.S.A. v. Roderick Gunn, Case No. 03-CR-1277. (Signed by Judge William H. Pauley III on 8/25/05)(bw, ) (Entered: 09/06/2005) |
| 07/07/2006 | 26 | SCHEDULING ORDER as to Roderick Gunn. Oral Argument set for 7/27/2006 03:30 PM before Judge William H. Pauley III.. (Signed by Judge William H. Pauley III on 6/26/06)(jw, ) (Entered: 07/10/2006) |
| 08/25/2006 | 27 | TRANSCRIPT of Proceedings as to Roderick Gunn held on 8/4/2006 @ 4:00 p.m. before Judge William H. Pauley III. (lb, ) (Entered: 08/25/2006) |

# EXHIBIT B

**Page Twenty**
**Letter to Honorable William H. Pauley III, U.S.D.J.**
**December 14, 2007**

### CONCLUSION

For the reasons stated above, it is clear that Roderick Gunn has shown a *"fair and just reason"* for the withdrawal of his guilty plea to Count III of Information 03 Cr. 1277 (WHP).   The failure of the plea agreement to accurately state the elements of Count III, the failure of any of the parties to correct this defect in the plea agreement at or before the guilty plea proceedings, the inadequate questioning of Gunn at these same proceedings as to the element of "aiding and abetting", and the insufficiency of his statements describing his criminal conduct, all lead to the conclusion that there was a clear violation of both requirements that a defendant understand the nature of the charge as per **Fed. R. Crim. P. (b)(1)(G)** and that the record show a factual basis for the conviction of the charge as per **Fed. R. Crim. P. (b)(3)**.

Therefore, it is respectfully submitted that Your Honor grant Gunn's motion for reconsideration to the extent requested in this memorandum.

Thank you.

Respectfully submitted,

Richard Palma

RICHARD PALMA
ATTORNEY AT LAW

# EXHIBIT C

## ARGUMENT

### POINT I

WHERE THIS COURT HELD IN A PRIOR DECISION IN A RELATED
PROSECUTION THAT THE GOVERNMENT HAD FAILED TO
PROVE AN INTERSTATE COMMERCIAL EFFECT OF THE HOBBS
ACT ROBBERY CHARGED IN COUNT 2 AND THE GOVERNMENT
OMITTED THE INTERSTATE NEXUS ELEMENT FROM ITS
EXPLANATION OF THE ELEMENTS OF THE MARIJUANA
DISTRIBUTION CONSPIRACY CHARGED IN COUNT 4,
APPELLANT'S PLEAS TO THOSE COUNTS MUST BE VACATED.

As this Court has often emphasized:

"a guilty plea is no mere formality, but a 'grave and solemn act.' "
United States v. Arteca, 411 F.3d 315, 319 (2d Cir.2005) (quoting
United States v. Hyde, 520 U.S. 670, 677 (1997)). This is because a
guilty plea waives important rights, and therefore it "is valid only if
done voluntarily, knowingly, and intelligently, 'with sufficient
awareness of the relevant circumstances and likely consequences.' "
Bradshaw v. Stumpf, 545 U.S. 175 (2005) (quoting Brady v. United
States, 397 U.S. 742, 748 (1970)). A guilty plea should be an
"intelligent choice among the alternative courses of action open to the
defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). This
requires that the defendant is informed of all the crime's elements,
otherwise the plea is necessarily invalid. Bradshaw, 545 U.S. 185. So
long as "the record accurately reflects that the nature of the charge and
the elements of the crime were explained to the defendant by his own
competent counsel," a judge need not necessarily explain the elements
of each charge on the record. Id.

In all circumstances, however, the judge must follow the
detailed procedures set forth in Fed.R.Crim.P. 11(b) for the taking and
accepting of guilty pleas. Id. According to this Rule, before a judge
accepts a guilty plea, she must address the defendant personally in
open court, and she must inform the defendant of, and ensure that the
defendant understands, a host of things, including "the nature of [the]
charge to which [he] is pleading." Fed.R.Crim.P. 11(b)(1)(G). Rule

19

Similarly, Count 4 of the Information charged Appellant with conspiring with others known and unknown to distribute an unspecified quantity of marijuana between 2002 and 2003 (21 U.S.C. § 846).   Appellant was not informed of the interstate nexus element of this Count prior to his plea.  Since the subject marijuana was the proceeds of the Hobbs Act robberies, neither could the interstate commercial effect of this crime be proven.

---

no evidence to support an interstate nexus for the completed robberies. It presented no proof that the marijuana sold by the victims had originated out of state, that it was sold to out-of-state customers, that the victims themselves crossed state lines in conducting their business, or that the robbery depleted assets that would have purchased goods in interstate commerce. Similarly, in the case of Needham's attempted robbery, the government offered no proof as to the amount of money she expected to seize on Short Street, the origin of the marijuana, whether customers hailed from out of state, or how the robbery, if successful, might have affected the business enterprise.

Finally, the government did not provide testimony of any kind about marijuana production and trafficking in New York. Yet unlike cocaine or heroin-but like many legal products-marijuana may be grown, processed, and sold entirely within New York. See [United States v. ]Gomez, 580 F.3d [94, ]102 n.5 (2d Cir. 2009) (recognizing that marijuana can be grown in-state, whereas cocaine is exclusively foreign in origin); cf. United States v. Peterson, 236 F.3d 848, 855 (7th Cir.2001) (finding that the government failed to demonstrate victim's marijuana trade involved drugs originating out of state and vacating Hobbs Act conviction). Reports documenting the frequency and scale of in-state marijuana production, often implicating tens or hundreds of thousands of dollars, are abundant.[FN4]
United States v. Needham, 604 F.3d 673, 681 (2d Cir. 2010)

# EXHIBIT D

The elements of a conspiracy to distribute or possess with intent to distribute narcotics under 21 U.S.C. § 846 are "the existence of [such] a conspiracy and the defendant's willful joining it." <u>United States v. Story</u>, 891 F.2d 988, 992 (2d Cir. 1989). In addition, where the indictment charges an aggravated narcotics offense that carries an enhanced penalty based on a particular drug type and quantity pursuant to 21 U.S.C. § 841(b), "drug quantity must be deemed an element." <u>United States v. Gonzalez</u>, 420 F.3d 111, 129 (2d Cir. 2005). Gunn contends that the charge did not satisfy an interstate commerce nexus; but there is no requirement that the Government establish an interstate commerce nexus in order to support a conviction for narcotics conspiracy. In his plea allocution, Gunn admitted that "during the time period of 2002, 2003, I conspired with others to possess and distribute marijuana" and that "[o]n two occasions during 2002 and 2003, I sold 16 pounds of marijuana." This was more than adequate to support his conviction for conspiracy to distribute marijuana.

[

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

# EXHIBIT E

# PROFFER AGREEMENT

With respect to the meeting of Rodrick Gunn ("Client") and his attorney, Susan Gans, Esq., with Assistant United States Attorney Jason Sabot to be held at the Office of the United States Attorney for the Southern District of New York on July 2, 2003 ("the meeting"), the following understandings exist:

(1) **THIS IS NOT A COOPERATION AGREEMENT.** The Client has agreed to provide the Government with information, and to respond to questions, so that the Government may evaluate Client's information and responses in making prosecutive decisions. By receiving Client's proffer, the Government does not agree to make a motion on the Client's behalf or to enter into a cooperation agreement, plea agreement, immunity or non-prosecution agreement. The Government makes no representation about the likelihood that any such agreement will be reached in connection with this proffer.

(2) In any prosecution brought against Client by this Office, except as provided below the Government will not offer in evidence on its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by Client at the meeting, except in a prosecution for false statements, obstruction of justice or perjury with respect to any acts committed or statements made during or after the meeting or testimony given after the meeting.

(3) Notwithstanding item (2) above, (a) the Government may use information derived directly or indirectly from the meeting for the purpose of obtaining leads to other evidence, which evidence may be used in any prosecution of Client by the Government; (b) in any prosecution brought against Client, the Government may use statements made by Client at the meeting and all evidence obtained directly or indirectly therefrom for the purpose of cross-examination should Client testify; and (c) the Government may also use statements made by Client at the meeting to rebut any evidence or arguments offered by or on behalf of Client (including arguments made or issues raised sua sponte by the District Court) at any stage of the criminal prosecution (including bail, all phases of trial, and sentencing) in any prosecution brought against Client.

(4) The Client understands and agrees that in the event the Client seeks to qualify for a reduction in sentence under Title 18, United States Code, Section 3553(f) or United States Sentencing Guidelines, Sections 2D1.1(b) (6) or 5C1.2, the Office may offer in evidence in connection with the sentencing, statements made by the Client at the meeting and all evidence obtained directly or indirectly therefrom.

(5) To the extent that the Government is entitled under this Agreement to offer in evidence any statements made by Client or leads obtained therefrom, Client shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, or any other federal rule that such statements or any leads therefrom should be suppressed. By entering into this Agreement to waive all rights in the foregoing respects.

1

3550-A

Case 1:06-cr-00911-WHP   Document 92-2   Filed 12/18/08   Page 3 of 5

(6) If this Office receives a request from another prosecutor's office for access to information obtained pursuant to this Proffer Agreement, this Office may furnish such information but will do so only on the condition that the requesting office honor the provisions of this Agreement.

(7) It is further understood that this Agreement is limited to the statements made by Client at the meeting and does not apply to any oral, written or recorded statements made by Client at any other time. No understandings, promises, agreements and/or conditions have been entered into with respect to the meeting other than those set forth in this Agreement and none will be entered into unless in writing and signed by all parties.

(8) The understandings set forth in paragraphs 1 through 7 above extend to the continuation of this meeting on the dates that appear below.

(9) Client and Attorney acknowledge that they have fully discussed and understand every paragraph and clause in this Agreement and the consequences thereof.

Dated: New York, New York

JAMES B. COMEY
United States Attorney for the
Southern District of New York

By: _____
Assistant United States Attorney

_____
Client

_____
Attorney for Client

_____   _____
Witness                    8/20/03

Dates of Continuation

| 8/20/03 |
| 9/9/03 |
| 9/24/03 |
| 10/20/03 |
| 11/6/03 |

Initials of counsel, Client, AUSA, witness



55254-054
Roderick Gunn
United State Penitentiary
P.O. Box 019001
Atwater, CA 95301
United States

55254-054
Court Clerk
500 Pearl ST
Attn: Hon. William Pauley
NEW YORK, NY 10007
United States